COVINGTON, Chief Judge.
The issues in this case involve the trial court’s decision on a motion to suppress physical evidence, and alleged errors regarding an excessive sentence. We conditionally affirm the conviction and sentence and remand the case to reopen the suppression hearing.
Defendant, Phelim D. Brown, was charged by bill of information with possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1. Defendant pled not guilty and filed a motion to suppress physical evidence. The trial court denied the motion. Defendant withdrew his not guilty plea and pled guilty as charged, reserving his right to appeal the denial of his motion to suppress. See State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced defendant to imprisonment at hard labor for a term of eight years and ordered that three years of the sentence be served without benefit of probation, parole, or suspension of sentence. Defendant has appealed, urging two assignments of error:
j The trial court erred by denying defendant’s motion to suppress physical evidence
2. The trial court erred by failing to follow the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1 and by imposing an excessive sentence.
The only evidence presented by the state at the hearing on defendant’s motion to suppress consisted of the testimony of Baton Rouge City Police Officer Robert Paul Glaser. Defendant presented no evidence.
On May 25, 1988, Glaser was performing his duties as a police officer with other officers. Glaser’s testimony reflects that he and the other officers were patrolling for narcotics as part of the SNAP (Special Narcotics Action Patrol) program of the Baton Rouge City Police Department.
At about 9:45 p.m., four or five of the officers’ cars drove up in the 1300 block of East Washington Street in East Baton Rouge Parish. At that time, Glaser first observed defendant. Defendant was standing “right outside” a bar or lounge about five to ten yards from the door to the establishment. There were other people outside the bar or lounge. When defendant saw Glaser and the other officers exiting their ears, defendant ran “as fast as he could get to the door” of the bar or lounge and went inside. Glaser was about thirty-five to forty feet away from defendant when defendant ran into the building. None of the other persons Glaser had observed outside the business ran as defendant had done.
Glaser then ran after defendant. However, two or three of the other officers got to the door of the bar or lounge before Glaser; and they went inside after defendant. Glaser remained outside. Thereafter, the officers who had pursued defendant into the establishment brought defendant outside and left him with Glaser, before reentering the business to determine if defendant had thrown any narcotics down while he was inside the bar or lounge.
*1228 Outside the bar or lounge, Glaser conducted a pat-down of defendant for weapons. During that procedure Glaser felt an object, pulled up defendant’s shirt, and saw the butt of a gun. Glaser pulled the weapon out. It was a RG .32 caliber, six-shot, revolver loaded with six rounds of ammunition.
Glaser testified that he and the other officers were patrolling the area in question because it is a high crime area known to be frequented by drug abusers and drug dealers. When questioned as to whether or not he was dressed in plain clothes at the time of the patrol, Glaser testified that he was.
Glaser testified that he did not view any kind of illicit activity before he and the other officers stopped at the location in question. Glaser stated that he did not see defendant “drop or do anything” other than run inside the bar or lounge. In regard to the firearm he recovered while patting defendant down, Glaser did not know defendant had the weapon until he discovered it during the pat-down. Glaser had never previously seen defendant; however, he did not know if any of the other officers had had previous contact with defendant.
ASSIGNMENT OF ERROR NO. ONE:
By means of this assignment, defendant contends that the trial court erred by denying his motion to suppress all physical evidence obtained as a result of an unreasonable investigatory stop. Defendant asserts that the circumstances present in this case do not establish the requisite reasonable cause to support an investigatory stop.
The Fourth Amendment to the United States Constitution and Article I, section 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by Louisiana Code of Criminal Procedure article 215.1, as well as both federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Bracken, 506 So.2d 807, 811 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
Reasonable cause for an investigatory stop is something less than probable cause and must be determined under the facts and circumstances of each case. The officer must have articulable knowledge of particular facts which, in conjunction with reasonable inferences drawn therefrom, is sufficient to provide reasonable grounds to suspect the person involved of past, present or imminent criminal activity. State v. Bickham, 404 So.2d 929, 931 (La.1981). Whether or not reasonable cause exists in a particular case is determined by ascertaining whether the officer had sufficient knowledge of circumstances which would justify infringement upon the individual’s right to be free of governmental interference. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Payne, 489 So.2d 1289, 1291 (La.App. 1st Cir.), writ denied, 493 So.2d 1217 (La.1986).
At the trial court level, the state relied on State v. Wade, 390 So.2d 1309 (La.1980), cert. denied, 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 848 (1981), to support its position that there was reasonable cause to justify an investigatory stop of defendant. On appeal, the state continues to rely on Wade.
In Wade, two plainclothes police officers were on patrol in an unmarked vehicle in a high crime area when they observed Robert Wade walking in a hurried manner and continually turning his head “as if looking for someone.” When the officers approached Wade from the rear in their vehicle, Wade caught sight of the vehicle and immediately began to run. Wade was then pursued and stopped by the officers. At the time the officers made the decision to stop Wade, they felt Wade’s actions indicated he had just perpetrated a crime, but they had no knowledge that a crime had recently been committed, nor had they observed Wade committing any crime.
In concluding that there was reasonable cause to justify an investigatory stop of *1229 Robert Wade, the Louisiana Supreme Court stated, in pertinent part, as' follows:
In the past, this Court stated that startled looks, State v. Truss, 317 So.2d 177 (La.1975), or nervousness, State v. Chopin, [372 So.2d 1222 (La.1979)] at the approach of the authorities do not provide reasonable grounds for an investigatory stop. On the other hand, the officers had not only [Robert Wade’s] nervousness (“looking around”) but also his apparent sudden flight through a “high crime” area. In State v. Cook, 332 So.2d 760, 763 (La.1976), this Court held that a defendant’s actions “... in an area of nighttime robberies and purse snatchings ... consistent with an intention to commit this type of crime ...” sufficient to justify an investigatory stop. In State v. Taylor, 363 So.2d 699, 703 (La.1979), this Court also observed (albeit in dicta) that defendant’s sudden reaction to the presence of the police (in that case, from a fast walk to slow), coupled with his presence at night “in an area where robberies, rapes and purse-snatchings are common”, supported a stop and frisk.
The Taylor case is factually distinguishable from the present case in that the defendant fled after viewing the police officer riding in a marked vehicle rather than an unmarked one. However, this distinction does not compel a different result so long as the police officers reasonably believed that Wade knew their identity and reasonably believed that his actions were indicia of criminality-
The testimony of Officer Buckner at the suppression hearing and the trial established that the officers were riding in the same type of vehicle that the marked patrol utilized. He stated that the car was blue and white, although it was not the same blue and white “as a regular police car”. Officer Buckner also pointed out that it is common knowledge that this particular type of vehicle is utilized for unmarked patrol. This knowledge gained from experience as a police officer when coupled with the defendant’s immediate flight through a high crime area upon seeing the vehicle in which Officer Buckner was riding, was more than enough for him to reasonably suspect that he had been recognized as a police officer, and that some criminality was underway. Thus, the investigatory stop was lawful, [footnotes omitted; brackets ours] 390 So.2d at 1311-1312.
In the instant case, the articulable knowledge of particular facts to provide reasonable cause as disclosed by the testimony of Officer Robert Paul Glaser was essentially as follows. While on patrol as part of the Baton Rouge SNAP program, Glaser and other officers arrived in the 1300 block of East Washington Street at about 9:45 p.m. in four or five cars. At that location, defendant was seen standing outside a bar or lounge, only five to ten yards from the door of the establishment, along with some other persons. Upon seeing the officers exit their cars, defendant ran “as fast as he could get to the door” and entered the bar or lounge. The officers were at that location because it is within a high crime area known to be frequented by drug abusers and drug dealers. Glaser did not view any illicit activity by defendant before he and his fellow officers stopped their cars at the location; and he did not see defendant “drop or do anything” other than run inside the bar or lounge.
In reference to defendant’s flight upon viewing the police cars, we note that, unlike the facts in State v. Taylor, 363 So.2d 699 (La.1978), (in which the defendant fled after viewing a marked police car) and the circumstances in State v. Wade, (in which the defendant ran upon sighting an unmarked vehicle of the type used by the marked patrol and commonly known to be utilized for unmarked patrol), no evidence was introduced at the instant suppression hearing as to whether the cars utilized by Officer Glaser and the other officers were marked or unmarked cars. While Glaser’s testimony revealed he was dressed in plain clothes, his testimony does not reveal the type clothing worn by the other officers. Glaser stated that he had never previously seen defendant but that he did not know whether or not the other officers had had *1230 any prior contact with defendant. Thus, in reference to the circumstances preceding defendant’s flight, there is neither evidence of any circumstance from which the officers could have reasonably believed that defendant knew their identity as policemen nor evidence that the identity of any of the officers as a policeman had been disclosed to defendant, that defendant knew any of the officers to be policemen or that any of the officers was otherwise identified or identifiable as policemen. Therefore, with the evidence of defendant’s flight in its current posture, we are compelled to conclude that defendant’s flight represents ambiguous conduct. Cf. Wong Sun v. United States, 371 U.S. 471, 482-484, 83 S.Ct. 407, 414-415, 9 L.Ed.2d 441 (1963). Furthermore, we are unable to conclude from the record before us that the state has met its burden of proving the admissibility of the physical evidence defendant seeks to suppress. Cf. State v. Jackson, 424 So.2d 997, 1000 (La.1982).[1]
Because the incompleteness of the record could probably be eliminated by another hearing on the motion to suppress, we find appropriate the procedure of remand for a reopened hearing on the motion. See e.g. State v. Kennedy, 438 So.2d 210, 212 (La.1983); State v. Jackson, 424 So.2d at 1000; State v. Sterling, 444 So.2d 273, 281 (La.App. 1st Cir.1983). Accordingly, we remand this case for the trial court to receive, at the reopened hearing, evidence relevant to the circumstances surrounding the seizure of physical evidence sought to be suppressed, including evidence as to whether or not any of the officers identified themselves to defendant as policemen, whether or not defendant knew any of the officers to be policemen and whether or not any of the officers were otherwise identified or identifiable as policemen. If the trial court finds, in light of any new evidence introduced at the reopened hearing and the evidence previously introduced and the views expressed herein, that the seized physical evidence was inadmissible based on defendant’s assignment number one, it must afford defendant an opportunity to withdraw his guilty plea. Otherwise, we reserve to defendant the right, to timely appeal any adverse ruling on the motion to suppress within five days of that ruling. In the absence of such an appeal, the present conditional affirmance of defendant’s conviction and sentence becomes absolute. Cf. State v. Kennedy, 438 So.2d at 212.
ASSIGNMENT OF ERROR NO. TWO:
By means of this assignment, defendant contends that the trial court erred by failing to follow the sentencing guidelines in LSA-C.Cr.P. art. 894.1 and by imposing an excessive sentence. Defendant claims that the trial court failed to adequately review the factors which mitigated in his favor and that his sentence is grossly disproportionate to the severity of the crime and nothing more than a needless imposition of pain and suffering.
Article I, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of a sentence is a question of law which is reviewable. See State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence may be excessive either by reason of its length or *1231 because the circumstances warrant a less onerous sentencing alternative. State v. Tate, 506 So.2d 546, 552 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987). In other words, a sentence may be both within the statutory limits and constitutionally excessive. State v. Sepulvado, 367 So.2d at 767. A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether the penalty is so disproportionate as to shock our sense of justice. State v. Bonanno, 384 So.2d 355, 358 (La.1980). Because of the wide discretion afforded the trial court in imposing sentence, a sentence within statutory limits will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Orgeron, 512 So.2d 467, 470 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988).
A trial court’s reasons in imposing sentence, as required by LSA-C.Cr.P. art. 894.1, are an important aid to this Court when reviewing a sentence alleged to be excessive. State v. Christy, 509 So.2d 829, 831 (La.App. 1st Cir.), writ denied, 513 So.2d 296 (La.1987). The trial court need not recite the entire checklist found in LSA-C.Cr.P. art. 894.1. However, the record must reflect that the court adequately considered the guidelines. State v. Davis, 448 So.2d 645, 653 (La.1984). Even when the trial court has not complied with LSA-C.Cr.P. art. 894.1, this Court need not remand the case for resentencing, unless the sentence imposed, is apparently severe in relation to the particular offender or the offense committed. State v. Carr, 530 So.2d 579, 592 (La.App. 1st Cir.), writ denied, 533 So.2d 354 (La.1988), cert. denied, — U.S. -, 109 S.Ct. 1573, 103 L.Ed.2d 939 (1989).
Possession of a firearm by a convicted felon is punishable by imprisonment at hard labor for not less than three nor more than ten years without benefit of probation, parole, or suspension of sentence and a fine of not less than one thousand dollars nor more than five thousand dollars. LSA-R.S. 14:95.IB. Herein, defendant was sentenced to imprisonment at hard labor for a term of eight years with three years of the sentence to be served without benefit of probation, parole, or suspension of sentence; and no fine was imposed.
Prior to imposing sentence, the trial court reviewed defendant’s criminal record. The court noted that defendant had been convicted of aggravated battery for which he was currently on probation. The court also noted that defendant’s criminal record included arrests for illegal carrying of a weapon, public intimidation, attempted second degree murder and possession with intent to distribute cocaine.
In its reasons for imposing sentence, the trial court noted that, although defendant was not eligible for probation, the court felt that defendant would commit another crime during a period of probation. The court stated that defendant was in need of correctional treatment that can be obtained through incarceration in a penal institution. The court noted that defendant had a weapon in most of the instances in which he was arrested. The court further noted that any lesser sentence would deprecate the seriousness of the instant offense.
The trial court’s statements do not represent adequate compliance with LSA-C. Cr.P. art. 894.1. There is no indication that the trial court considered mitigating circumstances in addition to circumstances militating for incarceration. Cf. State v. Lewis, 416 So.2d 921, 925 (La.1982).
Nonetheless, we find it unnecessary to remand this case for resentencing. We find that the sentence imposed is not apparently severe in relation to defendant or the offense committed. Defendant has demonstrated by his past conduct of repeated criminality that he clearly poses an unusual risk to public safety because of his propensity to commit criminal offenses. We do not find defendant’s sentence to be grossly out of proportion to the severity of the offense or nothing more than the needless imposition of pain and suffering. Thus, we *1232 find no manifest abuse of the trial court’s sentencing discretion.
This assignment lacks merit.
CONDITIONALLY AFFIRM CONVICTION AND SENTENCE; REMAND CASE FOR REOPENED SUPPRESSION HEARING.

. We note that, in denying defendant's motion to suppress, the court referred to State v. Burnett, 513 So.2d 391 (La.App. 4th Cir.1987). In Burnett, two plain-clothes police officers in an unmarked police car patrolling a high crime area observed Fay Burnett and a male companion standing on a street corner the officers knew was often the site of illegal drug sales. The officers parked their car and watched a man they knew to be an illegal drug dealer approach the couple on the corner, speak with and shake hands with Burnett’s companion and then leave the corner. Shortly thereafter, the known illegal drug dealer returned, again spoke with Burnett's companion, shook hands and departed. Burnett and her companion also left the corner. As a result of the foregoing circumstances, the officers stopped Burnett, suspecting that they had observed an illegal drug transaction. Based on these facts the Fourth Circuit Court of Appeals concluded there was reasonable suspicion to justify an investigatory stop.
In the instant case, as previously noted, Glaser testified that he did not observe any illicit activity by defendant and that he did not see defendant "drop or do anything" other than run into the bar or lounge. Thus, the circumstances herein are clearly distinguishable from those in Burnett in which the officers observed conduct they suspected to be an illegal drug transaction.