STATE OF LOUISIANA

VERSUS

EDDIE J RICHARDS

NO. 23-KA-448

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 22-5631, DIVISION "H"
HONORABLE DONALD L. FORET, JUDGE PRESIDING

November 20, 2024

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Jude G. Gravois

**AFFIRMED**
    **JGG**
    **SMC**

**DISSENTS WITH REASONS**
    **FHW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
        Honorable Paul D. Connick, Jr.
        Monique D. Nolan
        Thomas J. Butler
        LaShanda Webb
        Ashton Brown

COUNSEL FOR DEFENDANT/APPELLANT,
EDDIE RICHARDS
        Jane C. Hogan

DEFENDANT/APPELLANT,
EDDIE J. RICHARDS
        In Proper Person

**GRAVOIS, J.**

Defendant, Eddie J. Richards, appeals his convictions and sentences for possession of a firearm while in possession of fentanyl, a controlled dangerous substance ("CDS"), in violation of La. R.S. 14:95(E) (count one); possession with intent to distribute a CDS, heroin, in violation of La. R.S. 40:966(A) (count two); possession of a stolen firearm, in violation of La. R.S. 14:69.1 (count three); and possession with intent to distribute a CDS, methamphetamine weighing less than twenty-eight grams, in violation of La. R.S. 40:967(A) (count four). On appeal, defendant's appointed appellate counsel raises the following assignments of error:

1. the evidence is insufficient to convict defendant of possession with intent to distribute heroin and methamphetamine;

2. this Court's denial of defendant's motion to supplement the record on appeal deprives defendant of his constitutional right to an appeal based on a complete record;

3. defendant received ineffective assistance of counsel when his appointed trial counsel failed to file a motion to quash and stipulated to the admissibility of a contradictory crime lab report; and

4. the trial court failed to consider objective sentencing factors and mitigation and imposed an excessive sentence.

Defendant filed a *pro se* supplemental brief, asserting the following assignments of error:

1. the trial court erred when it violated defendant's right to a fast and speedy trial;

2. the evidence was insufficient to obtain convictions at trial;

3. trial counsel was ineffective at trial;

4. defendant will be denied a proper judicial review being the appellate record is incomplete;

5. defendant was subjected to double jeopardy;

6. defendant was convicted on perjured testimony presented at his trial; and

7. defendant was denied a fair trial because of prosecutorial misconduct at trial.

For the following reasons, finding no merit to the assignments of error, we affirm defendant's convictions and sentences.

1

# PROCEDURAL HISTORY

On November 18, 2022, the Jefferson Parish District Attorney filed a bill of information charging defendant, Eddie J. Richards, with possession of a firearm while in possession of fentanyl, a controlled dangerous substance ("CDS"), in violation of La. R.S. 14:95(E) (count one); possession with intent to distribute a CDS, heroin, in violation of La. R.S. 40:966(A) (count two); possession of a stolen firearm, in violation of La. R.S. 14:69.1 (count three); and possession with intent to distribute a CDS, methamphetamine weighing less than twenty-eight grams, in violation of La. R.S. 40:967(A) (count four). Defendant was arraigned on December 9, 2022 and pled not guilty.

On February 24, 2023, defense counsel filed a motion *in limine* noting that defendant was previously charged with these same charges under a different case number (21-1474) and that the previous case had been dismissed on the morning of trial, November 4, 2022. Counsel stated that there had been a hearing on a motion to suppress in that prior case. He requested that specific testimony regarding a fatal drug overdose and suspected hand-to-hand narcotics transactions elicited during that hearing, and information within the police reports, be inadmissible at the instant trial. The April 24, 2023 minute entry states: "The State will omit anything to do with overdose … ."

Also on April 24, 2023, a twelve-person jury was selected, and following trial, the jury found defendant guilty as charged on all counts.

Defense counsel filed a motion for a new trial on May 8, 2023. Counsel argued the evidence was insufficient to convict defendant. Counsel contended that there was no evidence at trial that defendant intended to distribute any CDS or that defendant knowingly or intentionally possessed the firearm. He also argued that while DNA samples were taken, it was unknown whether such testing was completed.

The motion for a new trial was denied on May 11, 2023. After waiving delays, defendant was sentenced to ten years imprisonment with the Department of Corrections on counts one, two, and four, and to five years imprisonment with the Department of Corrections on count three. All sentences were ordered to be served concurrently. Defense counsel objected to the sentences.

Also on May 11, 2023, defense counsel filed a motion for reconsideration of sentence and a motion for appeal. The court denied the motion for reconsideration and granted the motion for appeal on May 22, 2023.

### FACTS

On October 8, 2020, Detective Russell Lloyd, then with the Gretna Police Department, and other officers were surveilling 1220 Monroe Street related to a narcotics investigation. After beginning the investigation, Detective Lloyd determined defendant Eddie Richards, who lived at the target location, was possibly involved. Detective Lloyd obtained information regarding two vehicles registered to defendant, defendant's cell phone number, and defendant's address. Detective Brad Cheramie with the Gretna Police Department, Detective Lloyd, and several other officers were involved in an investigatory stop of defendant.[1] Defendant was observed leaving his residence in one of the registered vehicles. The officers pulled him over approximately one block from his house. As Detective Cheramie approached the driver's side of the black Acura SUV, defendant stepped out of his vehicle, told Detective Cheramie to get a warrant, and locked his vehicle.

---

[1] Detective Cheramie was shown a photograph of defendant's cell phone and asked if it depicted the area where defendant was pulled over. Detective Cheramie replied that it was "almost thirty years ago" and that he did not recall the exact spot. The detective stated that the photograph was timestamped as July 2, 2022, which was not when the incident occurred.

Defendant was handcuffed, detained, and thereafter transported to the Gretna Police Department. He was advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Detective Cheramie's K-9 partner, Tanya, was deployed and conducted a "free-air sniff" of defendant's vehicle, giving a positive indication that narcotics were or had been present. Detective Lloyd then obtained a search warrant. The vehicle was searched at the Gretna Police Department by Detective Lloyd. He recited from the search warrant return that the following items were recovered from the vehicle: a prescription bottle containing forty-two pills that were positive for MDMA; a prescription bottle containing one hundred thirty-eight pills, which "came back as oxycodone"; and a prescription bottle containing forty-six pills, which were also oxycodone. The three prescription bottles were found in the vehicle's center console. Two of the bottles bore defendant's name and were for hydrocodone.

After searching defendant's vehicle, his home at 1220 Monroe Street was searched pursuant to a warrant obtained by Detective Lloyd.[2] Detective Cheramie explained that Tanya "hit on" various pills (including fentanyl), U.S. currency, and drug paraphernalia. Detective Cheramie related to Detective Lloyd where Tanya had indicated, which was mainly in defendant's bedroom, so that he knew where to search. Detective Cheramie specified that Tanya "hit" on the top dresser drawer, the bed, and two piggy banks. Detective Lloyd recited from the search warrant return that the following items were recovered from the residence: five knotted bags, each containing fifty pills, which were oxycodone; three packages of empty

---

[2] Detective Lloyd acknowledged that he was originally incorrect as to whom the vehicle search warrant was presented to and endorsed by. He agreed that his police report contained the same error as the search warrants for the house and vehicle.

Detective Cheramie reviewed a police report authored by Detective Lloyd and stated that to his knowledge, it accurately reflected the events that day. Detective Lloyd agreed that he authored two police reports in this case. He reviewed the reports and stated they did not contain incorrect information.

Ziploc bags; seventeen broken pills; two .40 caliber magazines; a .40 caliber cartridge box containing fifty live rounds; eighteen live .40 caliber cartridges; a P94 magazine; and an iPhone 7+. From the two vehicles, $8,419 was recovered. A stolen .40 caliber firearm with an empty magazine was found underneath a mattress. Detective Lloyd identified defendant's driver's license, and a vehicle registration for a white Mercedes, in a drawer with a magazine containing live rounds. Detective Lloyd testified that no one else was inside the residence at the time of the search.

Detective Lloyd was not sent information that DNA or fingerprints were found on any of the recovered items. He identified a USB drive from the Jefferson Parish Sheriff's Office digital forensics unit pertaining to defendant's cell phone extraction. He did not know if the phone contained anything of evidentiary value.

The parties stipulated to the admission for record purposes only of a crime lab report by forensic scientist Michael Cole, who tested the pills located in defendant's vehicle and residence. The stipulation reflected that if called to testify, Mr. Cole would state that the pills tested positive for methamphetamine, heroin, and fentanyl.

## COUNSELED ASSIGNMENT OF ERROR NUMBER ONE; *PRO SE* ASSIGNMENT OF ERROR NUMBER TWO

Defense counsel, and defendant in his *pro se* brief, argue that there was insufficient evidence as to the two convictions pertaining to possession with intent to distribute (counts two and four). Counsel contends that the convictions are based on circumstantial evidence because no drug transactions were witnessed. Counsel argues that the pills in defendant's car were not individually packaged and no baggies, scales, or paraphernalia were located. There was no expert testimony stating that the amount of drugs was inconsistent with personal use. Counsel contends that only two grams of methamphetamine and only fourteen grams of

heroin were found, which does not give rise to a presumption of intent to distribute. Counsel further argues that there is insufficient evidence because of the discrepancy between Detective Lloyd's testimony and the lab report regarding the actual narcotics recovered.

Defendant, in his *pro se* brief, avers that the evidence was insufficient as to all of the counts and that the judge erred in denying his motion for a new trial. He asserts that the officers who testified at trial stated the incident occurred thirty years prior. Defendant argues that the incident could not have occurred as the officers testified it did. Next, defendant appears to cite to facts alleged in the motion *in limine* regarding testimony at a hearing about Detective Lloyd possibly seeing a hand-to-hand transaction. He contends that the jury based the verdict on what they speculated the detective saw, but that he did not actually see. Defendant also argues that the officers did not wear body cameras; the searches were not recorded; defendant's DNA and fingerprints were not found on the pill bottles; defendant was never arrested or charged with possession or possession with intent to distribute fentanyl; defendant was in jail when the items were found; and there was no recorded statement from him.

The State only addresses the sufficiency of the evidence as to the two charges of possession with intent to distribute (counts two and four) as argued by defense counsel. It contends that it presented sufficient evidence, and there was evidence that supported a reasonable inference that defendant intended to distribute the narcotics. The State asserts that the amount of drugs recovered from defendant's vehicle and home give rise to the reasonable inference that defendant had the specific intent to distribute, and that the narcotics were not for personal use. The State argues that the observation of defendant's activities prior to the investigatory stop, the amount of drugs, drug paraphernalia, large sums of currency, and an illegal firearm supports the jury's determination that defendant

6

intended to distribute heroin and methamphetamine. Additionally, the State maintains that it met its burden in proving that the narcotics were actually heroin and methamphetamine.

The constitutional standard for sufficiency of the evidence is whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the State proved all of the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Gassenberger*, 23-148 (La. App. 5 Cir. 12/20/23), 378 So.3d 820, 829. This directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. *State v. Aguilar*, 23-34 (La. App. 5 Cir. 11/15/23), 376 So.3d 1105, 1108. This deference to the fact-finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. *Id*. Further, a reviewing court errs by substituting its appreciation of the evidence and the credibility of witnesses for that of the fact-finder and overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *Id*. As a result, under the *Jackson* standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. *Gassenberger*, *supra*.

In its determination of whether any rational trier of fact would have found the defendant guilty, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. *State v. Hutchinson*, 22-536 (La. App. 5 Cir. 8/18/23), 370 So.3d 769, 781, *writ denied*, 23-1296 (La. 2/27/24), 379 So.3d 662.

7

The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *Id.* Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Tate*, 22-570 (La. App. 5 Cir. 6/21/23), 368 So.3d 236, 244.

Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. *State v. Johnson*, 23-273 (La. App. 5 Cir. 2/28/24), 382 So.3d 1129, 1134. When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides: "[A]ssuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a separate test from the *Jackson* standard, but rather provides a helpful basis for determining the existence of reasonable doubt. *Id.*

The reviewing court is not required to determine whether a defendant's suggested hypothesis of innocence offers an exculpatory explanation of events. Rather, the reviewing court must evaluate the evidence in the light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Key*, 23-167 (La. App. 5 Cir. 12/27/23), 379 So.3d 96, 112-13.

### *Possession of a firearm while in possession of fentanyl (count one)*

Defendant was convicted of violating La. R.S. 14:95(E), which provides, in pertinent part, for the offense of possessing, or having under one's immediate control, any firearm while in the possession of a controlled dangerous substance. *See State v. Allen*, 15-231 (La. App. 5 Cir. 10/14/15), 177 So.3d 771, 780.

8

"Possession" under La. R.S. 14:95(E) includes both actual and constructive possession. *See State in the Interest of S.L.*, 11-883 (La. App. 5 Cir. 4/24/12), 94 So.3d 822, 832.

Actual possession means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. *State v. Ruffins*, 41,033 (La. App. 2 Cir. 9/20/06), 940 So.2d 45, 53, *writ denied*, 06-2779 (La. 6/22/07), 959 So.2d 494. The Supreme Court has not interpreted the term "immediate control" for purposes of La. R.S. 14:95(E). *See State v. Joseph*, 23-446 (La. App. 5 Cir. 4/24/24), 386 So.3d 688, 693. An item may be construed as being in a defendant's immediate control if it is in the area from within which he might gain possession of a weapon or destructible evidence or within arm's reach of the defendant's person. *State v. Blow*, 55,449 (La. App. 2 Cir. 2/28/24), 380 So.3d 856, 862.

A person is in "constructive possession" of a firearm when the firearm is subject to defendant's dominion and control. *Joseph*, *supra*. Courts have generally found evidence of constructive possession when a gun is found in an area customarily occupied by the defendant. *State v. Lattin*, 52,127 (La. App. 2 Cir. 9/26/18), 256 So.3d 484, 489. A defendant's mere presence in an area where a firearm was found does not necessarily establish possession. *State v. Jones*, 09-688 (La. App. 5 Cir. 2/9/10), 33 So.3d 306, 314. The State must prove that the offender was aware that a firearm was in his presence and that the offender had the general intent to possess the weapon. *Id*. *See also State v. Williams*, 23-506 (La. App. 3 Cir. 2/7/24), 380 So.3d 192, 199.

In *State v. Blanchard*, 99-3439 (La. 1/18/01), 776 So.2d 1165, 1174, the Supreme Court held that "when a defendant is found to be in constructive possession of a firearm while simultaneously in possession of a controlled dangerous substance, the state must prove that there is a nexus between the firearm

and the controlled dangerous substance." Proof of this nexus is not required where the defendant uses or has actual possession of the firearm or has the firearm within his immediate control. *State v. Bradley*, 22-191 (La. App. 5 Cir. 12/21/22), 356 So.3d 485, 502, *writ denied*, 23-147 (La. 10/31/23), 372 So.3d 808. When there is not actual possession or immediate control, the State must prove some connection between the firearm possession and the drug offense. This connection might be established by the following evidence: (1) the type of firearm involved; (2) the type of controlled dangerous substance involved; (3) the quantity of drugs involved; (4) the proximity of the firearm to the drugs; (5) whether the firearm is loaded; and (6) any other relevant evidence. *See Blanchard*, 776 So.2d at 1173.

In *State ex rel. D.R.*, 10-404 (La. App. 4 Cir. 11/10/10), 51 So.3d 844, 847, *writ denied*, 11-264 (La. 5/27/11), 63 So.3d 996, and *writ denied sub nom. State in the Interest of D.R.*, 10-2711 (La. 5/27/11), 63 So.3d 996, the juvenile was adjudicated delinquent for possession of a firearm and narcotics. While the juvenile was at school, detectives searched his bedroom and found marijuana in one dresser and a loaded firearm in another. *Id*. The Fourth Circuit found that a nexus between the two was required because the possession that was sought to be proved was constructive, not actual. The nexus was found. *Id*. at 850.

In *Williams*, *supra*, the court noted that officers recovered the firearms and cocaine in the defendant's registered vehicle, "an area customarily occupied by [herself]," and that the cocaine was found in the defendant's purse. 380 So.3d at 200. The court stated that although the co-defendant claimed ownership of the drugs at trial, he failed to claim ownership of the guns, and his testimony failed to corroborate the location of one of the guns. Moreover, the State's evidence demonstrated the defendant's knowledge of guns as well as the cocaine. *Id*. at 200-01. The court stated that any rational trier of fact could have found the State

proved beyond a reasonable doubt that the defendant possessed a firearm while in possession of cocaine. *Id.* at 201.

In *Lattin*, *supra*, the gun was found in the master bedroom where the defendant was sleeping. 256 So.3d at 492. The gun was in a shoe box on the dresser next to the bed, such that the defendant had close access to the gun. That bedroom also contained marijuana and a scale, which the defendant admitted belonged to him. The marijuana was found under the bed, and the scale was found on the dresser, in close proximity to the gun. The court therefore found that the jury's conclusion was reasonable that he exercised dominion and control over the gun in his bedroom sufficient to constitute constructive possession. *Id.*

In *Lattin*, after the court determined that there was constructive possession, it considered whether there was a connection between the gun and narcotics. The jury heard testimony from an officer as to a plausible reason why the defendant would possess a weapon. *Id.* at 493. In his longtime experience in law enforcement and in narcotics investigations, the officer explained that it was common for drug dealers to possess a weapon, and the defendant possessed enough marijuana and a scale to suggest he was involved in selling marijuana. The court found that it was reasonable for the jury to conclude that the defendant possessed the gun in order to protect his conceivable illegal activity. *Id.*

Here, upon review, we conclude that the State established constructive possession and a nexus between the firearm and the fentanyl. Testimony at trial established that defendant resided at 1220 Monroe Street. Officers surveilled the residence and saw defendant leave from the residence. While he left in one vehicle he owned, his other vehicle remained at the residence. There was no testimony as to whether the officers observed other people at the residence or if defendant was the only person who lived there. At the time of the search, no one else was inside of the home. In a bedroom of that residence, officers found defendant's driver's

11

license and the registration of a vehicle defendant owned, indicating that it was his room.  In that bedroom, the officers located a firearm under a mattress. Additionally, in defendant's room, officers located over two hundred fifty fentanyl pills in a dresser next to the bed.

The evidence shows defendant had constructive possession of both the firearm and the fentanyl, and that there was a nexus between them.  The instant facts are similar to the constructive possession in *State ex rel. D.R.*, *supra*.  Here, defendant was not in the home when a firearm and drugs were found in his bedroom.  There was constructive possession of the items because they were found in an area customarily occupied by defendant.  *See Williams*, *supra*.  As in *Williams*, defendant here knew about the gun per Detective Lloyd's testimony that defendant told him the firearm was under the bed.  A nexus was established based on the quantity of the fentanyl (over two hundred fifty pills), the firearm magazines and rounds, and the proximity between the firearm and the fentanyl.  This assignment of error is without merit.

### *Possession with intent to distribute heroin and methamphetamine (counts two and four)*

As to count two, defendant was convicted of possession with intent to distribute heroin.  La. R.S. 40:966(A) states in part:[3]

> A. Manufacture; distribution.  Except as authorized by this Part, it shall be unlawful for any person knowingly or intentionally:
>
> (1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule I.

As to count four, defendant was convicted of possession with intent to distribute methamphetamine.  La. R.S. 40:967(A) states in part:[4]

---

[3] While La. R.S. 40:966 has been amended since the offense, the subsection pertaining to possession with the intent to distribute remains the same.

[4] While La. R.S. 40:967 has been amended since the offense, the subsection pertaining to possession with the intent to distribute remains the same.

12

A. Manufacture; distribution. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:

(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II.

Heroin is a Schedule I CDS, and methamphetamine is a Schedule II CDS. *See* La. R.S. 40:964.

To prove possession with intent to distribute, the State was required to show defendant knowingly and intentionally possessed the drugs and that he did so with the specific intent to distribute it. *See State v. Richardson*, 13-886 (La. App. 5 Cir. 5/28/14), 142 So.3d 314, 322, *writ denied*, 14-1353 (La. 2/13/15), 159 So.3d 461. A person may be in constructive possession of a drug even though it is not in his physical custody if it is subject to his dominion and control. The determination of whether there is sufficient evidence of constructive possession to support a conviction depends on the specific facts of each case. *State v. Acevedo*, 22-124 (La. App. 5 Cir. 12/28/22), 356 So.3d 1137, 1144, *writ denied*, 23-112 (La. 11/15/23), 373 So.3d 76. Factors that may establish control or dominion for purposes of constructive possession include knowledge that the drugs were in the area, relationship with the person found to have possession, access to the area where the drugs were found, evidence of recent drug use, and physical proximity to the drugs. *Id.*

In the instant matter, defense counsel focuses on the element of intent to distribute and whether the drugs were actually the drugs he was convicted of possessing. In the element of intent to distribute, intent is a condition of mind which is usually proven by evidence of circumstances from which intent may be inferred. *State v. Lane*, 20-137 (La. App. 5 Cir. 12/23/20), 309 So.3d 886, 902, *writ denied*, 21-100 (La. 4/27/21), 314 So.3d 836. Multiple factors are to be

considered in determining intent: 1) previous attempts to distribute; 2) whether the drug was in a form consistent with distribution to others; 3) the amount of the drug; 4) expert or other testimony showing the amount found in the defendant's possession to be inconsistent with personal use only; and 5) paraphernalia evidencing an intent to distribute. *Id.* This Court has held that these factors are useful and the evidence need not fall squarely within them for the jury to find sufficient evidence of the intent to distribute. *Id.*

Possession of large sums of cash and possession of weapons may be considered evidence of the intent to distribute. *See State v. Melancon*, 14-221 (La. App. 5 Cir. 9/24/14), 151 So.3d 100, 110, *writ denied*, 14-2161 (La. 5/22/15), 170 So.3d 982. In the absence of circumstances from which an intent to distribute may be inferred, the mere possession of drugs does not evidence the intent to distribute, unless the quantity is so large that no other inference is possible. *Id.*

Here, forty-two pills of methamphetamine, one hundred thirty-eight pills of heroin, and forty-six pills of fentanyl were found in defendant's vehicle. Thus, a total of two hundred twenty-six pills of various scheduled drugs were found in defendant's vehicle divided by type into three different prescription bottles that were for drugs different from those they actually contained. Additionally, in defendant's residence, officers located five knotted bags, four of which contained fifty pills of fentanyl and one of which contained fifty-three pills of fentanyl. Another bag contained seventeen broken fentanyl pills. Also in defendant's residence, officers located a stolen firearm, three packages of empty Ziplock bags, and $8,419 in cash.

Upon review, we conclude that the State presented enough evidence for the jury to infer that defendant had the intent to distribute the drugs. The jury heard that defendant's house was being surveilled as part of a narcotics investigation. The jury could have reasonably concluded that the amount of drugs recovered was

14

beyond that typical of personal use. Further, defendant possessed a large sum of cash and a firearm, which further support a finding that defendant possessed the drugs with the intent to distribute them.

Defense counsel also contends that there is insufficient evidence to convict because of discrepancies between Detective Lloyd's testimony and the lab report as to the identity of the narcotics. Detective Lloyd testified at trial that the search warrant return reflected: "Prescription bottle containing forty-two pills of various colors MDMA, which means we tested it and it came back positive." He further stated that the search warrant return showed that the prescription bottle containing a hundred thirty-eight pills "came back as oxycodone." The detective agreed that he is not the person who officially tests a narcotic and determines which particular narcotic it is.

The parties stipulated that if the forensic scientist who conducted the testing was called to testify, he would say that the tested pills came back positive for methamphetamine, heroin, and fentanyl.[5] While instructing the jury, the judge explained that a stipulation is a "fact the lawyers agree is accurate. The lawyers may agree to stipulate to certain facts to save time. Unless I instruct you to the contrary, you must accept these stipulated facts as evidence and treat the stipulated facts as having been proven."

A stipulation has the effect of withdrawing a fact from issue and disposing wholly with the need for proof of that fact. *State v. Simmons*, 00-35 (La. App. 5 Cir. 7/25/00), 767 So.2d 860, 861. A stipulation has the effect of binding all parties and the court. Such agreements are the law of the case. *See State v. Youngblood*, 18-445 (La. App. 5 Cir. 5/22/19), 274 So.3d 716, 730, *writ granted,*

---

[5] The lab report was admitted into evidence for record purposes only. It reflects that the prescription bottle containing forty-two pills was found to contain two grams of methamphetamine in the eleven tablets tested. It further shows that the prescription bottle containing one hundred thirty-eight pills was found to contain fourteen grams of heroin.

*cause remanded*, 19-1160 (La. 6/3/20), 296 So.3d 1022, and *writ denied*, 21-203 (La. 5/25/21), 316 So.3d 2.

The jury followed the instructions and accepted that via the stipulation, the State proved that the drugs were in fact heroin and methamphetamine. Further, Detective Lloyd testified that he was not the person who tests drugs. As such, the State presented sufficient evidence as to the convictions of possession with intent to distribute heroin and methamphetamine (counts two and four).

### *Possession of a stolen firearm (count three)*

As to count three, defendant was convicted of illegal possession of a stolen firearm. At the time of the offense, pursuant to La. R.S. 14:69.1(A)(1), illegal possession of stolen firearms was the intentional possessing, procuring, receiving, or concealing of a firearm which has been the subject of any form of misappropriation. La. R.S. 14:69.1(A)(2) states: "It shall be an affirmative defense to a prosecution for a violation of this Section that the offender had no knowledge that the firearm was the subject of any form of misappropriation."

Here, the element of possession of the firearm was previously addressed as to count one. Thus, here the focus is on whether the State presented sufficient evidence that the firearm was stolen. At trial, during Detective Lloyd's testimony, he was asked to read the return of the search of defendant's residence. He stated in part, "40-caliber Ruger, model P94 pistol, serial number 34082121 with an empty magazine. And that was a stolen firearm."

Detective Lloyd was presented with an exhibit depicting a firearm under a mattress. He testified that defendant told him, prior to execution of the search warrant, that the firearm would be located under the bed. This was the same firearm that the investigation determined was stolen.

Detective Lloyd was then presented with the actual firearm, at which time he again agreed that it "came back as stolen." On cross-examination, Detective Lloyd

16

was asked: "You testified earlier that Mr. Richards told you that there was a gun in the house and some cash, right?" The detective agreed; after he obtained the search warrant for the residence, he asked defendant if there was anything illegal in the house. The conversation occurred while defendant was in a holding cell at the police station. Detective Lloyd said defendant indicated that there was a gun in the house. This conversation was not recorded.

In *State v. Williams*, 55,537 (La. App. 2 Cir. 2/28/24), 381 So.3d 287, the defendant contended that the State did not present corroborating evidence to establish that the firearm was stolen, and thus, failed to prove that he attempted to possess a stolen firearm. At trial, an officer testified that he ran the firearm through the police database and learned that the gun was stolen. The Second Circuit explained that although the officer did not specifically state the name of the database, officers in this state utilize the ATF database. The court provided that the ATF database, which is maintained through the National Crime Information Center, is a trusted and well-established tool used by law enforcement. Additionally, the officer testified that once he told the defendant that the firearm was stolen, he admitted to giving his girlfriend money to purchase the firearm "off the street." Therefore, in viewing the evidence in the light most favorable to the prosecution, the court found that the evidence presented was sufficient to convince a rational trier of fact that the State proved that the firearm was stolen. *Id*. at 294.

In the instant matter, Detective Lloyd testified multiple times that the firearm recovered in defendant's bedroom was stolen. The search warrant return was admitted into evidence and showed that the firearm was stolen. This Court will not re-evaluate the credibility of witnesses or re-weigh the evidence. *See Hutchinson*, *supra*. Further, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *Tate*, *supra*. The

17

jury found Detective Lloyd credible. His testimony, coupled with the search warrant return, was sufficient to support the conviction for possession of a stolen firearm.

## *Other arguments*

Defendant presents arguments unrelated to sufficiency of the elements of each offense. He states that Detective Lloyd testified regarding whether he did or did not observe three hand-to-hand transactions. His record citations to the testimony are to defense counsel's pretrial motion *in limine*. At trial, neither detective referenced transactions. As such, defendant's argument that the jury verdict was based on the juror's belief that Detective Lloyd saw the transactions is unsupported by the record, as the jury was not presented any such evidence.

Next, defendant appears to argue that the evidence was not sufficient because certain evidence, such as videos, DNA, and fingerprints, were not presented. Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. *Key*, 379 So.3d at 113. While defendant is correct that the State did not present evidence that his fingerprints or DNA were found on any of the recovered items, Detectives Lloyd and Cheramie identified defendant in court. Further, defendant was the owner and sole occupant of the vehicle. Also, the State presented evidence that the bedroom belonged to defendant. The lack of DNA or fingerprint evidence does not negate the other evidence presented. *See State v. Belvin*, 14-626 (La. App. 5 Cir. 12/16/14), 170 So.3d 987, 994 (where this Court explained that the fact that fingerprints were not developed did not negate the evidence of the defendant's occupation of and control of the premises). Further, even though the officers did not have body cameras, the searches were not video recorded, and there was no recorded statement by defendant, the jury still found that there was sufficient evidence as to each count. The jury found the detectives credible. It is not the

18

function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. As such, defendant's *pro se* arguments as to sufficiency of the evidence are without merit.

## *Motion for a new trial*

While defendant does not present support that the trial judge erred in denying his motion for a new trial beyond arguing that the evidence was insufficient, nevertheless, this Court will address his position.

Pursuant to La. C.Cr.P. art. 851, a motion for a new trial is based upon the supposition that an injustice has been done to the defendant, and unless such injustice is shown, the new trial motion shall be denied no matter upon what allegations the motion is grounded. *State v. Paul*, 15-501 (La. App. 5 Cir. 1/27/16), 185 So.3d 188, 198. When a motion for a new trial is based on the verdict being contrary to the law and the evidence, there is nothing for review on appeal. *State v. Lloyd*, 21-645 (La. App. 5 Cir. 8/24/22), 348 So.3d 222, 231, *writ denied*, 22-1354 (La. 11/22/22), 350 So.3d 499. However, both the Louisiana Supreme Court and this Court have addressed the constitutional issue of sufficiency of the evidence under this circumstance. *State v. Leach*, 22-194 (La. App. 5 Cir. 12/28/22), 356 So.3d 531, 541. The decision on a motion for a new trial rests within the sound discretion of the trial court. *State v. Williams*, 18-112 (La. App. 5 Cir. 11/7/18), 259 So.3d 563, 578, *writ denied*, 18-2038 (La. 4/22/19), 268 So.3d 295. The ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. *State v. Barrosse*, 23-393 (La. App. 5 Cir. 4/17/24), 386 So.3d 333, 337.

Here, the motion for a new trial was largely based on arguments that the verdict was contrary to the law and the evidence. Under La. C.Cr.P. art. 851(B)(1), the trial court shall grant a motion for a new trial whenever the verdict is contrary to the law and evidence. However, considering the evidence was sufficient to

support defendant's convictions, the trial court did not abuse its discretion by denying defendant's motion for a new trial on this ground. *See State v. Dillon*, 23-423 (La. App. 5 Cir. 6/5/24), 2024 WL 2839231; *State v. Hidalgo*, 20-89 (La. App. 5 Cir. 3/18/20), 293 So.3d 780, 788 (where this Court found that since the evidence was sufficient to support the defendants' convictions, the trial court did not abuse its discretion by denying the motion for a new trial on this ground).

For the foregoing reasons, these assignments of error are without merit.

## COUNSELED ASSIGNMENT OF ERROR NUMBER TWO AND *PRO SE* ASSIGNMENT OF ERROR NUMBER FOUR

Defense counsel argues that this Court's denial of defendant's motion to supplement the record on appeal deprives defendant of his constitutional right to an appeal based on a complete record. In his *pro se* assignment of error, defendant argues that he will be denied proper judicial review as the appellate record is incomplete.

On September 18, 2023, six days after the appellate record was lodged in this Court, defendant (through appointed defense counsel) filed a motion to supplement the appellate record. Defendant sought the transcript of the complete *voir dire* trial which occurred on April 24, 2023, and "all pleadings, minutes, and transcripts from *State v. Eddie Richards*, 24th JDC Docket Number 21-01474," explaining that these proceedings were necessary to complete appellate review. This Court granted the motion relative to the *voir dire* transcript, but denied it as to the record of 21-1474, ruling "that case was dismissed and forms no part of the record in the instant appeal."

Defendant was initially prosecuted in 21-1474 with five charges stemming from his October 8, 2020 arrest as described *infra*. At some point, defendant filed a motion to suppress evidence, which was heard and denied on November 7, 2022. On the morning of trial, November 4, 2022, the State discovered that two of its

20

primary witnesses would be unavailable. The State asked for a continuance, which the trial court denied. The State then *nolle prossed* the charges, and reinstituted four of the original five charges days later, on November 18, 2022.

Defense counsel asserts that the appellate record in this proceeding is incomplete because the record of the previously dismissed proceeding's (21-1474) motions to suppress evidence and hearing transcript thereof cannot be reviewed herein because this Court denied a motion to supplement the appellate record. Counsel argues that without those proceedings, defendant is denied his constitutional right to appeal all preserved errors and rulings upon which his conviction is based. Counsel asserts that defendant is precluded from challenging the ruling on the motion to suppress and sufficiency of the evidence. Counsel argues that the main issue in this case is whether the investigatory stop was justified and review of the transcript from the previous motion to suppress is essential. Counsel further contends that it is important to review the transcript from November 7, 2022 regarding the dismissal and later refiling of the charges. Counsel contends that without the requested proceedings, it is difficult to evaluate another assignment of error regarding whether the State's dismissal and refiling was proper. Counsel requests that this record be supplemented with the January 4, 2022 and November 7, 2022 proceedings from case number 21-1474.

Defendant similarly argues that by denying his request to supplement the record, he is being denied access to properly appeal. He states he cannot properly raise a claim regarding the motion to suppress and that the original police report is not part of the appellate record. He contends the bill in case number 21-1474 is the same as in the instant case and the bill in this case reflects the other case number. Defendant argues that none of the discovery was made part of this case and is not included in the record.

21

The State contends that the record is complete and that this argument lacks merit. It acknowledges the dismissal of the prior case and the refiling of four of the five charges eleven days after the dismissal. It asserts that the record sought is not part of the underlying proceedings. The State opines that this Court did not violate defendant's constitutional right to a complete record on review when it denied his motion to supplement. It argues that defendant did not file a motion to suppress evidence or statement in case number 22-5631 or re-urge the motion to suppress that was denied in case number 21-1474. The State provides that the motion to suppress was neither before the trial court for adjudication, nor preserved on appeal in this matter. Finally, the State argues that the law of the case applies here.

Initially, we find that law of the case does not apply here. Under the discretionary principle of "law of the case," an appellate court will generally refuse to consider its own rulings of law on a subsequent appeal in the same case. *State v. Sly*, 23-60 (La. App. 5 Cir. 11/2/23), 376 So.3d 1047, 1079, *writ denied*, 23-1588 (La. 4/23/24), 383 So.3d 608. The principle is applicable to all decisions of an appellate court, not solely those arising from a full appeal. *State v. Allen*, 17-685 (La. App. 5 Cir. 5/16/18), 247 So.3d 179, 185, *writ denied*, 18-1042 (La. 11/5/18), 255 So.3d 998. Among reasons assigned for application of the policy are the avoidance of indefinite relitigation of the same issue. The instant issue was not previously litigated; the duty judge of this Court signed the order denying the supplementation in part; the parties were not previously afforded an opportunity to argue the matter. For those reasons, the discretionary policy does not apply here.

La. Const. Art. I, § 19 provides that no person shall be subjected to imprisonment without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. In felony cases, the clerk or court stenographer shall record all the proceedings, including the examination of

witnesses, statements, rulings, orders and charges by the court, and objections, questions, statements, and arguments of counsel. La. C.Cr.P. art. 843; *State v. Kimble*, 22-373 (La. App. 5 Cir. 5/8/24), 389 So.3d 902. A defendant has a right to a complete transcript of the trial proceedings, particularly where appellate counsel did not represent defendant at trial. *Sly*, *supra*. Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal. *State v. Perilloux*, 21-448 (La. App. 5 Cir. 12/20/23), 378 So.3d 280, 322, *writ denied*, 24-104 (La. 9/4/24), 2024 WL 4035306. A defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts. *Id.* Also, there exists a presumption of regularity in judicial proceedings. *See* La. R.S. 15:432. *See also Perilloux*, *supra*.

Pursuant to the Uniform Rules, Courts of Appeal, Rule 2-1.7: "No record of another case (or prior record in the same titled and numbered case) shall be included in the record, unless such other record has been introduced into evidence at the trial court in the case on appeal, or on writs, and such other record shall accompany the record as an exhibit."

The appellate record does not reflect that defendant requested the prior proceedings in case number 21-1474 be adopted, incorporated, or admitted into evidence in this second proceeding, case number 22-5631. No motion to suppress was filed or re-urged in this case, only defendant's motion *in limine* seeking to exclude particular testimony about facts elicited at the motion to suppress hearing. There is no transcript from the motion *in limine* hearing, which, according to the minute entry memorializing the ruling, was granted right before trial began. There is no indication that defendant asked for the admission of the prior case

proceedings at the trial level; he in fact asked for the exclusion of parts thereof.[6] The same trial judge presided over both proceedings. Defendant had private counsel at the first proceeding, but was represented by appointed counsel in the second proceeding. Though the record of the previous proceedings were not admitted into evidence of this proceeding, defendant referred to the motion to suppress in his motion *in limine* and in his motion for a new trial, both filed in the second proceeding.

In *State v. Daspit*, 16-1522 (La. App. 1 Cir. 11/1/17), 233 So.3d 70, the First Circuit addressed the supplementation of the appellate record with an exhibit containing the record of a different proceeding. The case pertained to the expungement of a 2013 conviction for driving while intoxicated ("DWI"). The State opposed the expungement because a 2008 DWI conviction under docket number 389285 was expunged within ten years of the DWI at issue. After twice remanding the matter for limited purposes, the record was supplemented with Exhibit 1, a copy of the proceeding related to the 2008 DWI. In addressing the exhibit, the First Circuit stated: "Although the way by which Exhibit 1 has found its way into the appeal record is somewhat convoluted, what is clear from our review of the record below is that Exhibit 1 was not filed in any of the trial court proceedings below, and therefore, did not become part of the trial court record." *Id*. at 73. The court concluded that it had no authority to consider Exhibit 1, as it was not filed into the record below as evidence. *Id*.

In *State v. Bordenave*, No. 13-1265 (La. App. 4 Cir. 3/19/14), 2014 WL 1117973, after the State lodged its appeal, it filed a motion to supplement the record, which was designated, to be determined with the merits of the case. In

---

[6] Given that the prior proceeding was never made a part of the instant case, this request was likely superfluous. In any event, asking for something to be excluded that was never included only leads to the conclusion that the parties *assumed* the prior proceedings were included. The assumption does not make it so.

24

considering the State's argument that prescription had not expired on at least one count in the bill, the court addressed the motion to supplement. The court stated that although the record lacked information on previous cases against the defendant, the June 7, 2005 bill of information was apparently the second reinstitution of charges originally filed against the defendant on November 6, 2000. The court explained that between then and the institution of charges in this case, the State alleged it *nolle prossed* charges against the defendant twice. In its motion to supplement the record, the State sought to introduce bills of information and screening action forms in order to prove that prosecution was timely instituted. The court found that the State failed to introduce those documents at the hearing and that the documents were not subjected to adversarial challenge. As such, the court denied the State's motion to supplement the record. *Id.*[7]

This Court is mindful of *State v. Smith*, 09-259 (La. App. 5 Cir. 11/24/09), which has some factual similarities to the instant case. In *Smith*, as in this case, the charges in the first-filed case were *nolle prossed* because a witness was unavailable. Charges were refiled approximately one week later, and the defendant proceeded to trial where a 12-person jury found him guilty of lesser charges. On appeal, defendant challenged issues that had appeared in his motion to suppress, which was filed in the earlier proceeding and denied. The State in brief to this Court argued that the matter was not before this Court because the motions to suppress were filed in two previously dismissed cases, and that the motions and ruling were never incorporated into this case. A review of the case history in this Court showed that shortly after the appeal was lodged in this Court, defense

---

[7] *See also State v. McQuirter*, 12-486 (La. App. 4 Cir. 1/23/13), 108 So.3d 370, 371. There, the State appealed a judgment of the trial court, which granted the defendant's motion to quash. The State also filed a motion to supplement the record. The Fourth Circuit reversed the judgment of the trial court and denied the State's motion to supplement the record "because the material contained in the supplement was not presented to the trial court or subjected to adversarial challenge."

counsel filed a motion to supplement the appellate record with the transcript of the motion to suppress hearing from the predecessor case. Importantly, the State in *Smith* did not object to defendant's motion to supplement. A duty judge of this Court granted defendant's motion to supplement the appellate record, with no reasons or explanations.

In this case, defendant made a similar motion to supplement the appellate record, which was *denied* by the duty judge in part, the duty judge recognizing that the previous proceeding formed no part of the instant case. This ruling is consistent with Uniform Rules, Courts of Appeal, Rule 2-1.7: "No record of another case (or prior record in the same titled and numbered case) shall be included in the record, unless such other record has been introduced into evidence at the trial court in the case on appeal, or on writs, and such other record shall accompany the record as an exhibit," as is the ruling in *State v. McQuirter*, *supra*, and others cited above. As such, this Court's ruling by a duty judge in *State v. Smith* to grant the supplementation, which ruling violates Rule 2-1.7's explicit prohibition, is anomalous and cannot be considered authoritative.

This Court is also mindful of other cases, some from this Court, wherein panels of appellate courts remanded a criminal case for the *re-opening* of a hearing to allow the introduction of evidence that was inadvertently forgotten to be admitted. *See State v. Schexnayder*, 14-479 (La App. 5 Cir. 12/30/14), 167 So.3d 832, in which this Court, on appeal, ordered the case remanded for the *re-opening* of the motion to suppress hearing, finding that the transcript of the hearing indicated that the judge may have relied upon a narrative report by a detective that was not admitted into evidence at the hearing, but was attached to pleadings. *See also State v. Brown,* 558 So.2d 1226, 1230 (La. App. 1st Cir. 1990) ("Because the incompleteness of the record could probably be eliminated by another hearing on the motion to suppress, we find appropriate the procedure of remand for a

26

reopened hearing on the motion."); *State v. Williams*, 536 So.2d 612 (La. App. 1 Cir. 1988) (where the appellate court remanded the case and ordered the trial court to reopen the hearing on the motion to suppress and allow defense counsel to introduce into evidence the tapes of the defendant's confession which were provided to the trial court for consideration at the suppression hearing); *State v. Sterling*, 444 So.2d 273, 281 (La. App. 1 Cir. 1983) ("However, when an error has occurred in an evidentiary ruling during a hearing on a motion to suppress a confession, the recent practice of the Louisiana Supreme Court has been to remand the motion for a reopened hearing to correct the error.").[8]  Also, in *State v. Young*, 99-880 (La. App. 5 Cir. 1/12/00), 751 So.2d 364, 365, this Court conditionally affirmed the defendant's conviction and remanded for a reopening of a suppression hearing, because the record failed to include the search warrant the parties had referred to at the hearing.

In the aforementioned cases, hearings were *re-opened* to receive evidence relied on and discussed at the hearing, but that had been inadvertently not admitted. In this case, there is no hearing to re-open.  No motion to suppress was filed in this proceeding.  The only motion hearing that appears to have taken place in this case was on defendant's motion *in limine* seeking to exclude the deputy witnesses from mentioning anything about a fatal overdose that may have been linked to defendant's drug distribution.  Defendant did not seek to introduce pleadings and transcripts from the dismissed case, but rather sought to exclude some facts elicited

---

[8] *See also State v. Sagastume*, 23-224 (La. App. 5 Cir. 12/27/23), 379 So.3d 137, *writ denied*, 24-135 (La. 3/19/24), 381 So.3d 712, in which the defendant filed a motion to quash, and the State filed an opposition thereto, with the attached exhibits.  Although the trial court had relied upon the State's exhibits when granting defendant's motion, the exhibits had not been introduced into evidence during the hearing.  Approximately one month after the trial court granted the motion to quash, during a hearing on a separate case against the defendant, the State sought to introduce the exhibits into the record of the first case.  *The defendant did not object*, and the *trial court* admitted the exhibits.  While this Court found the trial court's after the fact supplementation inappropriate, it nonetheless found it could consider them on appeal because the exhibits were ultimately admitted by the trial court.

there. There is no transcript of that hearing, and that motion was granted in defendant's favor.

The proper procedure to have employed is found in *State v. Reimonenq*, 19-367 (La. 10/22/19), 286 So.3d 412, 415, where the State entered a *nolle prosqui*, reinstated charges, and orally moved, in the new trial court proceeding, to adopt all previous filings and motions from the original case.

Based on the foregoing, we find that the record is complete as to this case under this case number and that supplementation of the record on appeal of a separate case would be improper. These assignments of error are without merit.

## COUNSELED ASSIGNMENT OF ERROR NUMBER THREE

Defendant received ineffective assistance of counsel when his appointed trial counsel failed to file a motion to quash and stipulated to the admissibility of a contradictory crime lab report.

## *PRO SE* ASSIGNMENT OF ERROR NUMBER THREE

The trial counsel was ineffective at trial.[9]

Defense counsel argues that defendant received ineffective assistance of counsel because trial counsel did not file a motion to quash the subsequent bill of information and because counsel stipulated to the introduction of the crime lab report. Counsel contends that under prevailing professional norms, a reasonable attorney would have filed a motion to quash and that trial counsel's failure to do so fell below an objective standard of reasonableness. Counsel further concludes that defendant was prejudiced because the State could not have prosecuted the case had the motion to quash been filed.

As to the stipulation, counsel argues that the crime lab report was the only evidence supporting the convictions for possession with intent to distribute.

---

[9] Because these assignments of error are related, they are addressed together.

28

Counsel argues that had a crime lab technician testified, the defense could have inquired into testing methods, asked for an explanation of the conflicting results, and probed whether any opiate derivative would test positive for heroin. Counsel asserts that a reasonably competent attorney would have insisted that the technician testify and be cross-examined. Counsel explains that if the substances were actually proven to be different scheduled narcotics, defendant would have faced lesser sentences or been found not guilty.

Defendant similarly argues that counsel was ineffective because he failed to file a motion to quash on double jeopardy grounds. Additionally, defendant contends that counsel was ineffective for the following reasons: not giving an opening statement, not objecting to a question at trial referencing marijuana, not calling any witnesses, and not objecting regarding issues he raises in assignments of error numbers six and seven. He also suggests that it was error for counsel to ask the jury to find him guilty and to refer to defendant as a drug dealer.[10]

The State contends there is no merit to defense counsel's argument because trial counsel's assistance was neither deficient nor resulted in prejudice. It asserts that counsel's arguments are speculative, non-specific, and conclusory, as counsel provides no proof of what was deficient in trial counsel's performance or any prejudice resulting from trial counsel's actions.

Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. *State v. McMillan*, 23-317 (La. App. 5 Cir. 12/27/23), 379 So.3d 788,

---

[10] It appears this is in reference to statements made by defense counsel during closing arguments. Specifically, counsel stated: "You have all these elements, okay? And if you don't have all the elements, you can find him guilty as charged, but maybe you can find him guilty of something else." Counsel then said: "And my honest belief is that you should not find him guilty of anything, that's what I'm asking you to do." Additionally, in closing arguments, defense counsel referenced photographs admitted into evidence of the residence and described the home as immaculate. Counsel stated: "I've been doing this for about twenty-six years now. I have never seen a drug dealer's house look like that."

798-99, *writ denied*, 24-131 (La. 9/4/24), 2024 WL 4035149.  To prove ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable."  *Id.*  To prove prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different.  *State v. Robinson*, 23-277 (La. App. 5 Cir. 6/28/23), 368 So.3d 737, 742, *writ denied*, 23-1042 (La. 12/5/23), 373 So.3d 979 (relying on *Strickland*).

To prevail, the accused must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *State v. Gatson*, 21-156 (La. App. 5 Cir. 12/29/21), 334 So.3d 1021, 1040.  Any inquiry into the effectiveness of counsel must be specific to the facts of the case and must take into consideration the counsel's perspective at the time.  *Id.*  The Sixth Amendment does not guarantee errorless counsel or counsel judged ineffective by hindsight.  *State v. Robinson*, 22-310 (La. App. 5 Cir. 4/12/23), 361 So.3d 1107, 1121.

Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal.  *Gatson*, *supra*.  However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy.  *Id.*  If, on the other hand, the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be

relegated to post-conviction proceedings under La. C.Cr.P. arts. 924-930.8. *Id.*

When there is sufficient evidence to consider some, but not all, of the allegations

of ineffectiveness of counsel before it, this Court has declined to address any of the

claims on grounds that they should be addressed in their entirety by the district

court on post-conviction relief at an evidentiary hearing. *State v. Fontenelle*, 17-

103 (La. App. 5 Cir. 9/13/17), 227 So.3d 875, 884.

For purposes of an ineffective assistance of counsel claim, the filing of

pretrial motions is squarely within the ambit of the attorney's trial strategy.

*Robinson*, 361 So.3d at 1122. Counsel's decisions as to which motions to file or to

pursue form a part of trial strategy. *Id.* Hindsight is not the proper perspective for

judging the competence of counsel's trial decisions and an attorney's level of

representation may not be evaluated based on whether a particular strategy is

successful. *Id.* The defendant must overcome the presumption that counsel's

conduct falls within the wide range of reasonable professional assistance and that

the challenged action "might be considered sound trial strategy." *State v. Starks*,

20-429 (La. App. 5 Cir. 11/3/21), 330 So.3d 1192, 1198 (citing *Strickland*, *supra*).

Many of the alleged deficiencies here fall under the ambit of trial strategy.[11]

The allegations of ineffective assistance of counsel for decisions relating to

investigation, preparation, and strategy can only be sufficiently investigated in an

evidentiary hearing where the defendant could present evidence beyond that

contained in the record. *Starks*, 330 So.3d at 1199. Defendant's claims pertaining

---

[11] *See State v. Ruffin*, 02-798 (La. App. 5 Cir. 12/30/02), 836 So.2d 625, 632, *writ denied sub nom. State ex rel. Ruffin v. State*, 03-3473 (La. 12/10/04), 888 So.2d 831. There, the defendant argued that he was denied the right to have the State prove that the two rocks sold to the officer contained cocaine because his counsel stipulated that the two rocks contained cocaine. This Court found that the alleged error related to trial strategy and should be asserted by application for post-conviction relief.

*See also State v. Reeves*, 18-270 (La. 10/15/18), 254 So.3d 665, 670 ("Whether to call a witness is within the ambit of trial strategy."); *State v. Johnson*, 34,009 (La. App. 2 Cir. 1/24/01), 778 So.2d 706, 711, *writ denied*, 01-508 (La. 3/8/02), 810 So.2d 1153 (where the court found that counsel's waiver of an opening statement was a tactical decision which did not necessarily demonstrate a lack of trial strategy).

to closing arguments which he appears to misinterpret, could be addressed based on the evidence in the record; however, where there is sufficient evidence to consider some but not all of the allegations, all claims of ineffective assistance are more properly addressed on post-conviction relief at an evidentiary hearing. *See State v. Crochet*, 10-387 (La. App. 5 Cir. 2/15/11), 61 So.3d 725, 728-29; *State v. Cambre*, 05-888 (La. App. 5 Cir. 7/25/06), 939 So.2d 446, 460-61, *writ denied*, 06-2121 (La. 4/20/07), 954 So.2d 158. As such, we decline to address the merits of any of the claims of ineffective assistance of counsel at this time.

## COUNSELED ASSIGNMENT OF ERROR NUMBER FOUR

In this assignment of error, defendant asserts that the sentences are excessive, and argues that the trial court failed to consider objective sentencing factors and mitigation. He notes he was offered a plea deal in which he would have been sentenced to time served. Defendant sets forth mitigating factors he argues the trial court did not consider. He argues that the State did not establish any of the aggravating factors found in La. C.Cr.P. art. 894.1. Defendant argues that he is not the worst type of offender, and therefore, the maximum sentences were not justified.

The State contends that the record supports the sentences imposed. It contends that defendant's crimes caused harm to society and increased danger to the community. The State argues that the possession of a stolen firearm and ammunition, coupled with defendant's illegal drug activity, posed a substantial risk to the lives of law enforcement officers and the general public. The State recounts defendant's criminal history and notes that the narcotics and firearm were in the home he shared with his young son.[12] The State concludes that the sentences are not excessive.

---

[12] The record is silent as to whether the home was shared with anyone else and as to the age of defendant's son.

At the sentencing hearing on May 11, 2023, the judge was presented with substantially the same arguments now made, which include defendant's claims of mitigating factors, and the State's claims of aggravating ones. Defendant's criminal past was acknowledged, and that his last conviction was over ten years ago. Defendant was a Vietnam veteran and a United States Marine veteran. His age (68) was noted. Defense counsel noted the judge's earlier willingness to accept a plea involving a sentence of time served and the State's willingness to amend the charges for such a plea. Counsel argued defendant should receive the minimum sentence on each count.

The prosecutor then addressed the dismissal and reinstatement of the charges, as well as the DNA issue raised in the motion for a new trial. She noted that defendant was a "quad offender," dating back to 1973, and that his prior offenses included aggravated battery, aggravated battery with a dangerous weapon, illegal use of a dangerous weapon, "95.1," possession of hydrocodone, and bank fraud. The large quantity of drugs seized were noted, as well as the large quantity of fentanyl, which the judge recognized as a societal "pandemic" overdose issue.

Defendant was then sentenced to ten years imprisonment on counts one, two, and four, and to five years imprisonment on count three. All counts were ordered to be served concurrently. Defense counsel objected to the sentences.

La. C.Cr.P. art. 881.1(B) provides that a motion for reconsideration of sentence "shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based." La. C.Cr.P. art. 881.1(E) provides that "failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." This Court has held that when the specific

grounds for objection to the sentences, including alleged non-compliance with La. C.Cr.P. art. 894.1, are not specifically raised in the trial court, then these issues are not included in the bare review for unconstitutional excessiveness, and the defendant is precluded from raising these issues on appeal. *State v. Kelson*, 23-274 (La. App. 5 Cir. 12/27/23), 379 So.3d 779, 784.

Here, defense counsel filed a motion for reconsideration of sentence, wherein he generically asserted that the sentences are excessive, that they should be reconsidered, and that lower sentences should be imposed. The judge issued a written ruling wherein he explained that the sentences are within the statutory limits and that they are not disproportionate to the serious crimes committed. The judge mentioned that defense counsel did not cite to any law or compelling argument that the sentences should be set aside, and denied the motion.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Article I, § 20 of the Louisiana Constitution also prohibits cruel and unusual punishment, but further explicitly prohibits excessive punishment. *State v. Ervin*, 23-11 (La. App. 5 Cir. 8/30/23), 370 So.3d 1236, 1245, *writ denied*, 23-1336 (La. 4/9/24), 382 So.3d 816. A sentence is considered excessive, even when it is within the applicable statutory range, if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. *Id.* A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Barnes*, 23-208 (La. App. 5 Cir. 12/27/23), 379 So.3d 196, 204.

A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and therefore, is given broad discretion when imposing a sentence. *McMillan*, 379 So.3d at 802. The issue on

appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. *Id.* The review of sentences under La. Const. art. 1, § 20 does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is most appropriate in a given case. *Id.*

The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); *State v. Corea-Calero*, 22-117 (La. App. 5 Cir. 12/28/22), 355 So.3d 697, 701. Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. *Barnes*, *supra*. In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. *Gassenberger*, 378 So.3d at 840. On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Lasalle*, 22-577 (La. App. 5 Cir. 8/18/23), 370 So.3d 521, 531, *writ not considered*, 24-253 (La. 4/16/24), 383 So.3d 149.

In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. *Id.* However, there is no requirement that specific matters be given any particular weight at sentencing. *Gassenberger*, *supra.* The trial judge is granted great discretion in imposing a sentence, and sentences will not be set aside as excessive absent clear abuse of that broad discretion. *Id.*

In part, counsel appears to take issue with the sentences imposed in light of the prior offer to sentence defendant to time served. This Court has recognized

that when a defendant chooses not to accept the plea bargains offered by the State, he takes the risk of a greater penalty upon a jury conviction. *Kimble*, *supra*. Particularly, the risk of penalty becomes greater upon jury conviction because the court has the benefit of witness testimony, allowing it to more fully consider the severity of the offense. *Id*. Although the judge maintained his offer as the jury deliberated, the argument that the sentences were excessive considering the prior offer lacks merit.

Next, defense counsel contends the judge did not list any considered mitigating factors and did not reference the sentencing guidelines of La. C.Cr.P. art. 894.1. When alleged non-compliance with La. C.Cr.P. art. 894.1 is not specifically raised in the trial court, it is not included in the bare review for unconstitutional excessiveness. *Kelson*, *supra*. While defendant filed a motion to reconsider, any alleged issues pertaining to La. C.Cr.P. art. 894.1 were not raised in the motion. As such, to the extent that defendant is now arguing on appeal that the trial court failed to consider factors set forth in La. C.Cr.P. art. 894.1, he is not entitled to review of whether the trial court complied with Article 894.1. *See State v. Adams*, 23-427 (La. App. 5 Cir. 4/24/24), 386 So.3d 676, 683.

We next turn to whether each sentence is unconstitutionally excessive. In the instant case, defendant was convicted of possession of a firearm while in possession of fentanyl in violation of La. R.S. 14:95(E) (count one), possession with intent to distribute heroin in violation of La. R.S. 40:966(A) (count two), possession of a stolen firearm in violation of La. R.S. 14:69.1 (count three), and possession with intent to distribute methamphetamine weighing less than twenty-eight grams in violation of La. R.S. 40:967(A) (count four).

As to count one, La. R.S. 14:95(E) states that if an offender possesses a firearm while in possession of a CDS, the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than

ten years without the benefit of probation, parole, or suspension of sentence. Defendant was sentenced to ten years imprisonment on this count.

Per count two, La. R.S. 40:966(B)(3)(a) states that when the narcotic is heroin, upon conviction for any amount, the offender shall be imprisoned at hard labor for not less than five years nor more than forty years and may be required to pay a fine of not more than fifty thousand dollars. Defendant was sentenced to ten years imprisonment on this count.

As to count three, La. R.S. 14:69.1(B)(1) states that upon a first offense, whoever commits the crime of illegal possession of a firearm shall be punished with or without hard labor for not less than one year and not more than five years. Defendant was sentenced to five years imprisonment at hard labor on count three.

Regarding count four, La. R.S. 40:967(B)(2)(a) states that the penalty for possession with intent to distribute a Schedule II substance with an aggregate weight of less than twenty-eight grams shall be imprisonment, with or without hard labor, for not less than one year nor more than ten years and may include a fine of not more than fifty thousand dollars. Defendant received a ten-year sentence on this count.

Considering the nature of the crimes, this Court pays particular attention to the amount and type of drugs involved. Specifically, there were forty-two methamphetamine pills, one hundred thirty-eight heroin pills, and two hundred ninety-six fentanyl pills. The Centers of Disease Control and Prevention ("CDC") labels fentanyl as the deadliest drug in the country, serving as the cause of most drug overdoses, with approximately three hundred deaths per day. *State v. Harville*, 23-413 (La. App. 3 Cir. 11/29/23), 374 So.3d 1139, 1146. Further, this Court has found that it is difficult to overstate the serious nature of any crime involving heroin given the danger the substance poses to public health. *See State v. Williams*, 16-600 (La. App. 5 Cir. 6/29/17), 224 So.3d 1194, *writ denied*, 17-

37

1332 (La. 4/27/18), 241 So.3d 306.[13]  Although distribution of heroin is a non-violent crime, it is a serious crime given the threat heroin currently poses to public health.  *State v. Taylor*, 18-126 (La. App. 5 Cir. 10/17/18), 258 So.3d 217, 225, *writ denied*, 18-1914 (La. 5/20/19), 271 So.3d 200.

Additionally, defendant had the stolen firearm in his bedroom while various drugs were found in his bedroom and car.  Alongside the firearm, two .40 caliber magazines, a .40 caliber cartridge box containing fifty live rounds, and eighteen live .40 caliber cartridges were located.  The record shows the stolen firearm was found under a mattress and was not secured.  Our Courts have acknowledged that illegally possessing a firearm while possessing controlled dangerous substances is a most serious offense.  *See*, *e.g.*, *State v. Kimble*, 23-176 (La. App. 1 Cir. 9/21/23), 376 So.3d 869, 877.

After the jury found defendant guilty, the judge addressed defense counsel and indicated that he would like to learn how the investigation started as he considered the sentences.  Defense counsel explained that there had been a fatal overdose and that it was suspected that defendant was the supplier, though apparently there was not enough evidence to charge him in that death.  Thus, the record reflects that defendant's action did not just hypothetically pose a danger to the community, but may have already been connected to a fatal overdose.

The trial judge considered defendant's nature and background.  Defendant was sixty-eight years old at the time of sentencing.  Defendant was in the Marines for eight years and is a Vietnam veteran.  He is a single parent.  Defendant's last conviction was "twenty years ago or thereabouts," but he has a criminal history dating back to 1973 involving aggravated battery, aggravated battery with a

---

[13] In *Williams*, this Court acknowledged that at the time, according to the Centers for Disease Control and Prevention, "[h]eroin-related overdose deaths [in the United States] have more than quadrupled since 2010."  224 So.3d at 1198.

dangerous weapon, illegal use of a dangerous weapon, "95.1," possession of hydrocodone, and bank fraud. This criminal history suggests that defendant may commit additional offenses if given the opportunity and that he has a general disregard for the effects of his actions. *See State v. Grimsley*, 55,261 (La. App. 2 Cir. 9/27/23), 372 So.3d 378, 386 (The defendant had seven prior felony convictions. The court found that the defendant's record indicated an extremely high likelihood that he would commit more felonies if allowed the chance.).

The third factor requires consideration of sentences imposed for similar crimes by this Court and other courts. In *State v. Grant*, 55,592 (La. App. 2 Cir. 4/10/24), 384 So.3d 1159, the defendant was convicted of possession with intent to distribute methamphetamine weighing less than twenty-eight grams and possession of a weapon while in possession of a CDS, among others. The Second Circuit found that the facts supported the sentences of ten years imprisonment per count. At the time of his arrest, the defendant was fifty years old, and his criminal record spanned over thirty years. His prior arrests and convictions included, but were not limited to, armed robbery, aggravated battery, distribution of marijuana, possession of cocaine, possession of a firearm by a convicted felon, and domestic abuse battery. The court found that the record showed that he continued to devote consistent efforts to dealing in drugs and possessing firearms, and upheld the sentences. *Id*. at 1164.

In *State v. Zeno*, 15-0763 (La. App. 1 Cir. 11/9/15), 2015 WL 6951581, *writ denied*, 15-2233 (La. 12/16/16), 212 So.3d 1175, the defendant was sentenced to ten years imprisonment for possession of a firearm while in possession of a CDS. The defendant had prior convictions for aggravated battery in 1985, distribution of cocaine in 1993, and possession of hydrocodone in 2006. The defendant's conviction of possession of hydrocodone also involved the recovery of a gun. The

First Circuit found that the defendant posed an unusual risk to public safety due to his continued association with illegal drugs and firearms and upheld the sentence.[14]

In *State v. Martin*, 40,150 (La. App. 2 Cir. 9/21/05), 911 So.2d 917, the Second Circuit affirmed a maximum sentence of five years for illegal possession of a stolen firearm. The court considered the defendant's criminal history and found him to be a first-time felony offender. However, the criminal history included a conviction for simple battery and five arrests for misdemeanor battery which were dismissed or resulted in fines. The court also found that the defendant would not likely respond to probation and treatment, that he would likely commit another crime during a period of suspended sentence or probation, that he was in need of correctional treatment in a custodial environment, and that a lesser sentence would deprecate from the seriousness of the crime. *Id*.[15]

As to the sentence for possession with intent to distribute heroin, the current sentencing provision went into effect on August 1, 2017. While no cases addressing whether a maximum sentence for possession with intent to distribute heroin under the current sentencing structure could be located, this Court has reviewed older heroin cases where the maximum sentence was higher than the current maximum sentence. In those cases, courts found that sentences longer than the sentence imposed here were not excessive. *See State v. Woods*, 20-73 (La. App. 5 Cir. 9/9/20), 303 So.3d 403, *writ denied*, 21-27 (La. 2/17/21), 310 So.3d 1150 (where forty-year sentences were upheld); *State v. Gallier*, 18-448, 2018 WL 6567120 (La. App. 3 Cir. 12/12/18) (where a twenty-five-year sentence was upheld); *State v. Dixon*, 17-422 (La. App. 5 Cir. 3/14/18), 241 So.3d 514, *writ*

---

[14] *See also State v. Taylor*, 98-603 (La. App. 5 Cir. 3/10/99), 733 So.2d 77 (wherein this Court upheld a ten-year sentence for a first-time offender convicted of illegal carrying of a weapon while in possession of cocaine).

[15] *See also State v. Webb*, 14-149 (La. App. 3 Cir. 10/1/14), 149 So.3d 310, *writ denied*, 14-2319 (La. 9/11/15), 176 So.3d 1036; *State v. Johnson*, 09-862 (La. App. 3 Cir. 2/3/10), 28 So.3d 1263 (where sentences of five years imprisonment for possession of a stolen firearm were upheld).

*denied*, 18-542 (La. 2/11/19), 263 So.3d 415 (where the maximum fifty-year sentence was upheld); *State v. Dee*, 09-712 (La. App. 5 Cir. 2/23/10), 34 So.3d 892, *writ denied*, 10-705 (La. 10/29/10), 48 So.3d 1097 (where a forty-year sentence was upheld); *State v. Collins*, 09-283 (La. App. 5 Cir. 12/8/09), 30 So.3d 72, *writ denied*, 10-34 (La. 9/3/10), 44 So.3d 696 (where a thirty-five-year sentence was upheld).

Here, in light of the foregoing, we find that the record supports the sentences. Further, we conclude that the trial judge did not abuse his discretion in imposing the sentences. This assignment of error is without merit.

### *PRO SE* ASSIGNMENT OF ERROR NUMBER ONE

The trial court erred when it violated defendant's right to a fast and speedy trial.

### *PRO SE* ASSIGNMENT OF ERROR NUMBER FIVE

Defendant was subjected to double jeopardy.[16]

Defendant summarizes the prior case history wherein he was granted a speedy trial, the State was not ready for trial, and the State then dismissed the charges. He contends that he had a right to a speedy trial. He asserts that when the State reinstituted charges, a new bill of information should have been filed and that the case should have been re-allotted to another section, rather than continuing with the same judge who dismissed the previous case. He argues that the judge and assistant district attorney committed malfeasance and they conspired with each other to deny him appellate access to the courts. Additionally, defendant asserts that once the charges were dismissed, the entire case should have ended. He posits that if the case had proceeded at that time, he would have been acquitted. He

---

[16] These assignments of error are addressed together because they appear to be intertwined.

alleges that a second trial based on the same evidence constitutes double jeopardy and that the bill should be dismissed.

First, the prior case is not before the Court on appeal. In this matter, a motion for speedy trial was not filed. The bill of information in the instant case was filed on November 18, 2022, and trial occurred on April 24, 2023.

Pursuant to La. C.Cr.P. art. 572(A), the State had six years to institute prosecution against defendant as to counts one and two, as both are necessarily punishable by imprisonment at hard labor, and four years to institute prosecution as to counts three and four, which are not necessarily punishable at hard labor. The offenses occurred on October 8, 2020. The bill of information in this case number was filed on November 18, 2022, well within the time limitations of La. C.Cr.P. art. 572(A). Further, pursuant to La. C.Cr.P. art. 578(A)(2), the State had two years from the institution of prosecution within which to bring defendant to trial in this case. Trial commenced on April 24, 2023. The State complied with these time limitations and did not violate defendant's right to a speedy trial. The crux of defendant's position is that the State acted improperly when it *nolle prossed* the first bill when its continuance was denied and then reinstated most of the same charges.

First, this argument was not properly made or ruled on below. A motion to quash is the proper procedural mechanism to challenge the State's *nolle prosequi* and reinstitution of charges. *Leonard*, 262 So.3d at 392. *See* La. C.Cr.P. art. 531. In *Leonard*, in the context of the defendant's ineffective assistance of counsel assignment, the court addressed the lack of a motion to quash after charges were *nolle prossed* and re-instituted. The court looked to La. C.Cr.P. art. 576 and concluded that the State timely reinstituted prosecution, defendant did not demonstrate prejudice, and counsel was not ineffective. Here, as raised in other

assignments of error, a motion to quash was not filed below. Additionally, a motion for speedy trial was not filed in this case.

In any event, we find that the State did not act improperly. District attorneys are imbued with vast authority over criminal prosecutions—they alone determine whom, when, and how they shall prosecute and may dismiss an indictment or a count in an indictment at their discretion without leave of court. *See* La. Const. art. V, § 26(B); La. C.Cr.P. art. 61. Indeed, they alone determine whether to dismiss a case. *State v. Reimonenq*, 19-367 (La. 10/22/19), 286 So.3d 412, 415. *See also* La. C.Cr.P. art. 691. The effect of a dismissal, or *nolle prosequi*, is to discharge the particular indictment, bill of information, or affidavit; however, it does not bar further prosecution if it is entered before the first witness is sworn. La. C.Cr.P. arts. 691, 693; *State v. Norwood*, 351 So.2d 122, 124 (La. 1977). However, a district attorney's exercise of this power cannot impinge on the accused's right to a speedy trial because that right is "'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." *Reimonenq, supra*.

Because the record in the prior case was not entered into evidence in the present case,[17] the facts surrounding the *nolle prosequi* and subsequent refiling of the bill here are not fully developed. However, at a hearing in the instant case on May 11, 2023, the prosecutor recalled that a major witness in this case, a detective, was not available for trial. The State had moved for a continuance, which was denied. Accordingly, the State entered a *nolle prosequi* on the previous case, and refiled charges thereafter, within the time limitations for speedy trial rights. The prosecutor and defense counsel acknowledged that one count involving fentanyl was not reinstated.

---

[17] *Compare Reimonenq, supra* (where the State entered a *nolle prosqui*, reinstated charges, and orally moved, in the trial court second proceeding, to adopt all previous filings and motions from the original case).

A witness's absence is considered a valid reason for delaying trial under the Speedy Trial Clause. *State v. Love*, 00-3347 (La. 5/23/03), 847 So.2d 1198, 1204 (where the right to a speedy trial was addressed in the context of the State reinstituting charges that it *nolle prossed* when a continuance based on a witness's unavailability for trial was denied). *See also State v. Cinquemano*, 18-532 (La. App. 4 Cir. 10/24/18), 257 So.3d 234, 236, *writ denied*, 18-1872 (La. 4/29/19), 268 So.3d 1033.

Here, the State's continuance was requested because a witness was unavailable. There is nothing in the record indicating the State, by dismissing and refiling the case, was attempting to gain a tactical advantage over defendant, beyond assuring that all of its witnesses were present to testify. *See State v. Batiste*, 05-1571 (La. 10/17/06), 939 So.2d 1245; *State v. Dawson*, 19-1612 (La. App. 1 Cir. 11/17/20), 316 So.3d 77, *writ denied*, 21-217 (La. 5/4/21), 315 So.3d 222. Defendant does not demonstrate that he was prejudiced by the delay except to conclude that the current case was improper.

Additionally, defendant's contention that the second bill constitutes double jeopardy is incorrect. "The double jeopardy clauses of the federal and state constitutions protect against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *State v. Gasser*, 22-64 (La. 6/29/22), 346 So.3d 249, 255. Jeopardy does not attach and there is no application of the constitutional prohibition until the defendant is "put to trial before the trier of the facts, whether the trier be a jury or a judge." *State v. Otkins-Victor*, 15-340 (La. App. 5 Cir. 5/26/16), 193 So.3d 479, 538, *writ denied sub nom. State ex rel. Otkins-Victor v. State*, 16-1495 (La. 10/15/18), 253 So.3d 1294. *See also* La. C.Cr.P. art. 592.

44

Here, the first bill was *nolle prossed* prior to the empaneling and swearing in of the jury and prior to any witness testimony. Therefore, jeopardy had not yet attached and the second bill did not violate the principles of double jeopardy. *See* La. C.Cr.P. art. 693. *See also Otkins-Victor*, *supra*. For those reasons, these assignments of error are without merit.

As to defendant's argument that the case should have been re-allotted, defendant raises this issue for the first time on appeal and thus any error in this regard is not preserved for appeal. Further, even if this was improper, defendant has not demonstrated prejudice. *See State v. Juniors*, 05-649 (La. App. 3 Cir. 12/30/05), 918 So.2d 1137, 1140, *writ denied*, 06-267 (La. 9/15/06), 936 So.2d 1257, *cert. denied*, 549 U.S. 1226, 127 S.Ct. 1293, 167 L.Ed.2d 110 (2007). *See also State v. Mischiro*, 165 La. 705, 115 So. 909 (1928).

## *PRO SE* ASSIGNMENT OF ERROR NUMBER SIX

Defendant was convicted on perjured testimony presented at his trial.

## *PRO SE* ASSIGNMENT OF ERROR NUMBER SEVEN

Defendant was denied a fair trial because of prosecutorial misconduct at trial.[18]

Defendant alleges his convictions were the result of perjury and false testimony and references *Napue v. People of State of Ill.*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). He contends the prosecutor covered up the perjury in closing arguments and used the judge to do so. Defendant asserts that alleged perjured testimony that the incident occurred thirty years ago (rather than three years ago) misled and confused the jury and painted him in a bad light. He also states this helped justify why the officer could not recall the incident.

---

[18] Defendant requests that these assignments be addressed together. Specifically, he states in assignment of error number seven: "Further Appellant ask [sic] that the issues and claims raised in Assignment of error #6 also be made part of this assignment of error too [sic]."

Further, defendant maintains that the prosecutors committed prosecutorial misconduct and vouched for the credibility of its witnesses. In support, he references a statement in the State's closing argument that the judge "does not allow" any illegally obtained evidence into trial. He contends that this statement was improper, misplaced, and strengthened the State's case. Defendant asserts that the statement alluded that the evidence was lawfully obtained, which bolstered the State's case. He references the prosecutor saying, "very good" as support that the prosecutor improperly vouched for the officer.[19]

Defendant cites to the following instances that he alleges are perjury. On cross-examination, Detective Cheramie was asked whether a photograph depicted the area where defendant was pulled over. The transcript reflects that he responded: "That was -- it was almost thirty years ago. I don't recall exactly the exact spot." Next, he cites to testimony wherein Detective Lloyd was confronted about testifying that Commissioner Paul Schneider signed the warrants when it was actually Commissioner Patricia Joyce that signed them. Defendant also cites to a statement in the State's rebuttal closing arguments wherein the prosecutor said, "Defense Counsel kept referencing a judge's signature on the search. If the search warrants that wa [sic] obtained were illegally obtained, you wouldn't be seeing any of the drugs today, okay?" As to his argument about prosecutorial misconduct, defendant again references the State's rebuttal closing argument where the prosecutor asserted: "Second, the Judge does not allow any illegally obtained evidence to come into trial."

In *Napue*, *supra*, the United States Supreme Court held that where a prosecutor allows a State witness to give false testimony without correction, a reviewing court must reverse the conviction if the witness's testimony reasonably

---

[19] Defendant again argues that the State erred in dismissing and refiling the charges. These arguments are addressed elsewhere in this opinion.

could have affected the jury's verdict, even if the testimony goes only to the credibility of the witness. *State v. Sparkman*, 13-640 (La. App. 5 Cir. 2/12/14), 136 So.3d 98, 112, *writ denied*, 14-477 (La. 11/26/14), 152 So.3d 897. To prove a *Napue* claim, the defendant must show that the prosecutor acted in collusion with the witness to facilitate false testimony. *Id.* Furthermore, fundamental fairness, *i.e.*, due process, is offended "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* (quoting *Napue*, *supra*). When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. *Id.* (citing *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)). However, the grant of a new trial based upon a *Napue* violation is proper only if: (1) the statements at issue are shown to be actually false; (2) the prosecution knew they were false; and (3) the statements were material. *Id.*

Defendant's allegation that the State allowed false testimony was not reflected in the record and not preserved. In order to preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. La. C.Cr.P. art. 841; *Sly*, 376 So.3d at 1076. The purpose of the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity, allowing him the opportunity to make the proper ruling and correct any claimed prejudice to the defendant, procedural irregularity, or evidentiary mistake. *Dixon*, 241 So.3d at 522. The contemporaneous objection rule applies to claims that the prosecutor used perjured testimony and to claims that the prosecutor made an improper closing argument. *See State v. Jackson*, 43,139 (La. App. 2 Cir. 3/26/08), 979 So.2d 678, 683, *writ denied*, 08-952 (La. 12/12/08), 997 So.2d 560.

The defense did not object below to the testimony defendant asserts was perjured.  Also, the incorrect testimony as to who signed the warrants was corrected on cross-examination.  As there is no ruling for this Court to review, no relief is warranted.  *See Sly*, *supra* (The defendant raised for the first time on appeal that the State allowed false evidence to go uncorrected in violation of *Napue*.  This Court found that this was not preserved and that there was no ruling to review.).  *See also State v. Patton*, 22-112 (La. App. 5 Cir. 12/21/22), 355 So.3d 156, *writ denied*, 23-151 (La. 11/8/23), 373 So.3d 60; *Sparkman*, *supra*.

Considering the remarks made by the State on rebuttal closing argument, La. C.Cr.P. arts. 770 and 771 govern improper comments made during closing arguments and authorize the trial court to correct a prosecutor's prejudicial remarks by ordering a mistrial or admonishing the jury at the defendant's request.  *State v. Monterroso*, 22-390 (La. App. 5 Cir. 4/26/23), 361 So.3d 1177, 1198, *writ denied*, 23-745 (La. 11/21/23), 373 So.3d 447.  La. C.Cr.P. art. 774 states:

> The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
>
> The argument shall not appeal to prejudice.
>
> The state's rebuttal shall be confined to answering the argument of the defendant.

A prosecutor retains "considerable latitude" when making closing arguments.  *State v. Castillo*, 13-552 (La. App. 5 Cir. 10/29/14), 167 So.3d 624, 642, *writ denied sub nom. State ex rel. Castillo v. State*, 14-587 (La. 11/7/14), 152 So.3d 172, and *writ denied*, 14-2567 (La. 9/18/15), 178 So.3d 145.  Further, the trial judge has broad discretion in controlling the scope of closing arguments.  *Id*.

Nevertheless, even if the State's argument was improper, a conviction or sentence will not be reversed for improper closing argument unless the court is thoroughly convinced the remarks influenced the jury and contributed to the verdict.  *Id*.  Even where a prosecutor's argument has exceeded the scope of

48

Article 774 or is deemed to be improper, a reviewing court should credit the good sense and fairmindedness of the jurors who have heard the evidence. *Chester*, 314 So.3d at 964.

Here, defense counsel did not object to the prosecutor's remarks or request a mistrial. As such, the matter is not preserved for appellate review. *See State v. Camper*, 08-314 (La. App. 4 Cir. 10/1/08), 996 So.2d 571; *Jackson*, 979 So.2d 678. In any event, even if the prosecutor's comments were improper, defendant is still not entitled to relief. The court must be thoroughly convinced that the argument influenced the jury and contributed to the verdict before reversing a conviction based on misconduct during the closing arguments. *Chester*, 314 So.3d at 965. The judge instructed the jury that opening statements and closing arguments are not to be considered as evidence. After reviewing the prosecutor's rebuttal arguments, and considering the entirety of the record, the jury verdicts were reasonably based on the evidence presented by the State. We find nothing in the record to demonstrate that the prosecutor's comments so influenced the jury and contributed to the verdict that it would warrant a reversal of the convictions and sentences. *See Chester*, *supra*; *Paul*, *supra*. *See also State v. Boys*, 19-675 (La. App. 4 Cir. 5/26/21), 321 So.3d 1087, *writ denied*, 21-909 (La. 11/10/21), 326 So.3d 1245, *cert. denied*, -- U.S. --, 142 S.Ct. 1672, 212 L.Ed.2d 580 (2022); *State v. Lawson*, 18-0382 (La. App. 1 Cir. 11/8/18), 2018 WL 5876815, *writ denied*, 18-2048 (La. 5/20/19), 271 So.3d 1272.

Regarding Detective Cheramie's testimony, at the start of his testimony, he explained that he had been in law enforcement for ten years. Therefore, as acknowledged by defendant, it is not possible that Detective Cheramie was involved in this incident thirty years ago. This appears to be a typographical error or immaterial misstatement, rather than uncorrected false testimony. Even if the

transcript is correct, no objection was raised below, and the matter is not preserved for appellate review. These assignments of error are without merit.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

The sentencing minute entry reflects that "the Court informed the defendant he/she has … two (2) years after judgment of conviction and sentence has become final to seek post-conviction relief." However, the transcript, which controls, does not show an advisal pursuant to La. C.Cr.P. art. 930.8. *See State v. Lynch*, 441 So.2d 732, 734 (La 1983). Accordingly, pursuant to La. C.Cr.P. art. 930.8, defendant is hereby advised that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. *See State v. Harris*, 23-233 (La. App. 5 Cir. 12/27/23), 379 So.3d 152, 161, *writ denied*, 24-118 (La. 4/23/24), 383 So.3d 607.

## DECREE

For the foregoing reasons, defendant's convictions and sentences are affirmed.

## AFFIRMED

## WICKER, J., DISSENTS WITH REASONS

I have considered the majority opinion, and I respectfully disagree that the record before us is complete or satisfies defendant's constitutional right to judicial review based on a complete record of the proceedings, pursuant to La. Const. art. I, § 19.

The crimes in this matter occurred on October 8, 2020. The trial court proceedings against defendant arising from these crimes were held under two case numbers, 21-1474 and 22-5631. Considering the circumstances of this case, as set forth below, it is my opinion that the records of the proceedings under both case numbers are necessary to afford defendant his constitutional right to judicial review.

On January 4, 2021, under case number 21-1474, the State charged defendant with five counts of drug and/or firearms charges. Defendant filed a motion to suppress evidence and statement, which was denied after a hearing on January 4, 2022. The case was set for trial on November 7, 2022, and the State moved for a continuance that day, but the trial court denied the motion. That same day, the State dismissed the charges against defendant in case number 21-1474, indicating on the bill of information, "State was forced to trial. Had to enter a Nolle Prosequi. State reserved its right to re-instate." Defendant was represented by private counsel during these proceedings.

Shortly thereafter, on November 18, 2022, the State filed a new bill of information under case number 22-5631, charging defendant with four of the same counts charged in case number 21-1474. The new bill of information contains the notation, "REFILE," and indicates, "Diversion pending #21-1474." This second case was allotted to the same trial judge in the same division of court as the original case. At defendant's request, he was represented by appointed counsel during the second case.

1

On February 24, 2023, in the second case, 22-5631, defendant filed a motion in limine seeking to exclude from trial certain information elicited at the hearing on the motion to suppress, which was held in the original case, 21-1474. The State later agreed to omit specific information at trial, as requested in defendant's motion in limine.

Defendant proceeded to trial on April 24, 2023, and a jury found him guilty as charged on each of the four counts. On May 8, 2023, defendant filed a motion for new trial, arguing that during the pre-trial suppression hearing, officers testified they conducted surveillance of defendant and observed what they believed were hand-to-hand transactions, but they ultimately admitted they were unsure if defendant had, in fact, distributed any controlled dangerous substances. On May 11, 2023, the trial court denied the motion for new trial and then sentenced defendant.

Thereafter, defendant filed a motion for appeal, in which he asked the trial court to order the Clerk of Court to lodge his entire record "including but not limited to Pre-trial, Trial, and Post-trial proceedings." The trial court issued an order granting the motion for appeal and ordering the Clerk of Court to prepare defendant's record and transmit it to this Court, but did not specify what the record should include. The proceedings from the original case, 21-1474, were not included in the appellate record.

After the record was lodged, defendant's appellate counsel filed a motion in this Court to supplement the record with all pleadings, minutes, and transcripts from case number 21-1474. Two days later, this Court issued an order denying the motion to supplement, stating, "that case was dismissed and forms no part of the record in the instant appeal."

For appellate review, a criminal defendant has the right to a complete transcript of the trial court proceedings, particularly when appellate counsel did not

2

represent the defendant at trial. *State v. Sly*, 23-60 (La. App. 5 Cir. 11/2/23), 376 So.3d 1047, *writ denied*, 23-1588 (La. 4/23/24), 383 So.3d 608. In the present case, defendant was represented by a private attorney during the original case, an appointed attorney during the second case, and is now represented by a third attorney on appeal.

The record before us does not show that defendant sought to introduce the record of the original proceedings in case number 21-1474 into the second case, 22-5631, and no motion to suppress was filed in case number 22-5631. However, once the charges were refiled just days after they were dismissed, the second case proceeded as if it was simply a continuation of the original case.

The bill of information in case number 22-5631 indicates it was a refiled case and refers to case number 21-1474. The same trial judge in the same division of court presided over the proceedings held under both case numbers. The motion to suppress held in the original case was referred to several times in the second case. Defendant filed his motion in limine based on information from the suppression hearing which took place in the first case, and there is no indication that anyone objected or argued that the suppression hearing was not part of the ongoing case against defendant. When referring to the motion in limine, even the majority agrees that the parties considered the proceedings from the original case to be part of the second case. The majority states, "asking for something to be excluded that was never included only leads to the conclusion that the parties *assumed* the prior proceedings were included" in the second case, but then states, "[t]he assumption does not make it so." (Emphasis in original.)

Additionally, in the second case, defendant's motion for new trial was based on the officers' testimony during the suppression hearing and their subsequent, allegedly contradictory, testimony during the trial of the second case. At the hearing on the motion for new trial and sentencing, the trial court discussed the

proceedings, including defendant's representation by private counsel in the first case and the circumstances surrounding the dismissal of the first case, and indicated he was very familiar with the history of the case. Appointed counsel then commented, "you're obviously very familiar with this case, from the many months that [private counsel] represented him prior to my representation."

During closing arguments, although the prosecutor did not specifically reference the motion to suppress, she implied the trial court had considered the legality of the search warrant and the admissibility of the evidence obtained when she stated:

> …the Judge does not allow any illegally obtained evidence to come into trial. Defense counsel kept referencing a judge's signature on the search. If the search warrants wa [sic] obtained were illegally obtained, you wouldn't be seeing any of the drugs today, okay?

"Inherent in justice and the concept of fairness is ensuring a 'balance of forces between the accused and his accuser.'" *State v. Reimonenq*, 19-0367 (La. 10/22/19), 286 So.3d 412, 417; *Wardius v. Oregon*, 412 U.S. 470, 474, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 92 (1973). Although district attorneys have vast authority over criminal prosecutions and can dismiss a case without creating a bar to prosecution for the same offense, the State's exercise of its power to dismiss and reinstitute charges cannot violate a defendant's right to due process and fundamental fairness in the proceedings against him. *Id.*

The trial court proceedings against defendant occurred under two case numbers due to the State's decision to dismiss the original case and refile the charges after its motion for a continuance was denied. The State's decision should not negatively impact defendant's constitutional right to judicial review of the entire proceedings against him, particularly when the proceedings in the original case were considered in the second case, as shown by the direct and indirect references to the motion to suppress. In the interests of due process and

4

fundamental fairness, I think the proceedings under case number 21-1474 must be considered on appeal.

This Court has no authority to admit evidence or supplement the appellate record with evidence not introduced in the trial court. *See* Uniform Rules, Courts of Appeal, Rule 2-1.7; *State v. Daspit*, 16-1522 (La. App. 1 Cir. 11/1/17), 233 So.3d 70; *State v. Nichols*, 03-1317 (La. App. 5 Cir. 3/30/04), 871 So.2d 590, 593-94. However, this Court and others have often remanded criminal cases to the trial court for completion of the record, allowing the State or defense the opportunity to introduce exhibits into evidence.

In *State v. Schexnayder*, 14-479 (La. App. 5 Cir. 12/30/14), 167 So.3d 832, 836, the defendant sought review of the trial court's judgment denying his motion to suppress evidence, arguing the court relied on a report that had not been admitted into evidence. This Court found the record was insufficient to review the totality of the circumstances, where it could not determine if the trial court reviewed the report prior to denying the motion to suppress. This Court vacated the denial of the motion to suppress and remanded for the trial court to re-open the suppression hearing to receive additional testimony and evidence.

In *State v. Williams*, 536 So.2d 612, 615 (La. App. 1 Cir. 1988), the Court found that remand was appropriate to allow for completion of the record, where it was apparent that the trial court considered a taped confession that had not been admitted into evidence during the hearing on the defendant's motion to suppress. The Court acknowledged that appellate courts are not authorized to receive evidence outside of the record and reasoned it would be a futile exercise to affirm the trial court's ruling and require defendant to proceed via application for post-conviction relief, when a simple remand for a reopened hearing on the motion to suppress in order to admit evidence would suffice. The Court stated, "We believe that, in the interest of justice and judicial economy, this defendant should not suffer

5

an undue burden and delay on post-conviction procedures due to defense counsel's technical error in failing to formally introduce the taped confession into evidence." *Id.*

In *State v. Sagastume*, 23-224 (La. App. 5 Cir. 12/27/23), 379 So.3d 137, *writ denied*, 24-135 (La. 3/19/24), 381 So.3d 712, when the trial court granted the defendant's motion to quash, it considered exhibits that were attached to the State's opposition memorandum but had not been introduced or admitted into evidence during the hearing. Weeks later, during a hearing on a different case against the same defendant, the State sought to introduce the exhibits into the record of the first case. The defendant did not object, and the trial court admitted the exhibits. On review, this Court found the late supplementation was improper, but nevertheless, considered the exhibits on appeal. The Court acknowledged that it has previously remanded cases and re-opened hearings to allow the admission of evidence, but it found such an exercise would be futile and inefficient where the exhibits were ultimately admitted by the trial court. *Id.* at 142.

In *State v. Young*, 99-880 (La. App. 5 Cir. 1/12/00), 751 So.2d 364, 368, this Court remanded for the trial court to reopen a hearing on the defendant's motion to suppress in order to allow the introduction of a search warrant that had not been admitted into evidence at the original hearing. *See also State v. Whitley*, 14-737 (La. App. 5 Cir. 3/25/15), 169 So.3d 658; *State v. Perez,* 02-587 (La. App. 5 Cir. 11/26/02), 831 So.2d 542, *writ denied,* 03-0221 (La. 5/2/03), 842 So.2d 1100; and *State v. Bradford*, 23-381 (La. App. 5 Cir. 3/21/24), 384 So.3d 1106.[20]

---

[20] This Court has also remanded to allow the introduction and admission of evidence in several unpublished cases. *See State v. Leggett*, 18-647 (La. App. 5 Cir. 3/18/19), 2019 WL 1246911; *State v. Fultz*, 22-242 (La. App. 5 Cir. 6/7/22), 2022 WL 2036017; *State v. Pigott*, 18-598 (La. App. 5 Cir. 1/24/19), 2019 WL 322837; and *State v. Clofer*, 20-291 (La. App. 5 Cir. 5/4/21), 2021 WL 1761035.

The majority seeks to distinguish this case from the other remanded cases, as the present case does not arise from the failure to admit evidence at a particular motion hearing. However, in my view, the principles of fairness and justice require the same resolution, regardless of whether a particular hearing is reopened.

The majority acknowledges that this Court allowed supplementation of the appellate record in a similar case, *State v. Smith*, 09-259 (La. App. 5 Cir. 11/24/09), 28 So.3d 1092, 1095, *writ denied*, 10-1414 (La. 6/24/11), 64 So.3d 212. In *Smith*, the defendant's motions to suppress were addressed in a previous case that had been dismissed pursuant to a *nolle prosequi* and reinstituted. After the record was lodged, this Court granted the defendant's motion to supplement the record with the suppression hearing transcript from the dismissed case. On appeal, the defendant argued he was deprived of a fair hearing on his motions to suppress, but the State responded that the motions were not at issue because they had not been incorporated into the record of the case on appeal. This Court found the correctness of the ruling on the motion to suppress was properly before it, highlighting that the suppression hearing was before the same judge, in the same division, and the State did not object to the defendant's motion to supplement when it was filed.

Similarly, in the present case, shortly after the record was lodged, defendant filed a motion to supplement the record with the proceedings of the first case, 21-1474. However, unlike *Smith*, the duty judge for this Court denied the motion. The majority contends that the order granting the motion to supplement in *Smith* was anomalous and not authoritative, because it violated Uniform Rules, Courts of Appeal, Rule 2-1.7. The majority states that in *Smith*, "[i]mportantly, the State did not object to defendant's motion to supplement." My review of the case history reveals that the State did not object when the motion to supplement the record was filed in either *Smith* or the present case, likely because it was not afforded

7

sufficient time to respond to the motions. The State's objection to supplementation of the record was set forth in its appellee briefs in each case. As in *Smith*, the suppression hearing was held before the same judge, in the same division, and the State did not initially object. I believe that supplementation of the record is necessary in this case, as it was in *Smith*.

Considering defendant's right to judicial review based on a complete record of the proceedings and the interests of justice, it is my opinion that this Court should remand this case to the trial court with instructions to hold a hearing at which defendant is permitted to introduce part or all of the record of the original case, 21-1474, into the record of the case on appeal, 22-5631. I would pretermit the remaining issues until a full record of the trial court proceedings can be reviewed. For these reasons, I respectfully dissent.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 20, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-KA-448

## E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD L. FORET (DISTRICT JUDGE)
MONIQUE D. NOLAN (APPELLEE)       THOMAS J. BUTLER (APPELLEE)       JANE C. HOGAN (APPELLANT)

## MAILED
EDDIE J RICHARDS #87240 (APPELLANT)       HONORABLE PAUL D. CONNICK, JR.
RAYBURN CORRECTIONAL CENTER               (APPELLEE)
27268 HIGHWAY 21                          DISTRICT ATTORNEY
ANGIE, LA 70426                           LASHANDA WEBB (APPELLEE)
                                          ASHTON BROWN (APPELLEE)
                                          ASSISTANT DISTRICT ATTORNEYS
                                          TWENTY-FOURTH JUDICIAL DISTRICT
                                          200 DERBIGNY STREET
                                          GRETNA, LA 70053